Plaintiff brought this suit against the W. Horace Williams Company and its insurance carrier, the Employers' Liability Assurance Corporation, Ltd., a foreign insurance company doing business in this State, in which suit the plaintiff is asking for judgment against these two defendants, in solido, for compensation in the sum of $8,000, payable in 400 weekly installments, plus the sum of $250 for medical expenses, less the amount already paid, for total and permanent disability on account of an injury which he claims to have received on February 19, 1941, while working for the Williams Company at Camp Claiborne, in Rapides Parish. He alleges that he was working at said camp as a carpenter, and while he was assisting other workmen in lifting on a pole in aligning a building, he strained and injured the muscles, tissues, nerves and tendons of his back, and suffered a serious irregularity of the anterior superior border of the articular surface of the third vertebra.
The defendants filed an exception to the jurisdiction of the court of East Baton Rouge Parish on the ground that the alleged accident occurred in Rapides Parish and the employer is domiciled in Orleans Parish. The exception was overruled by the district court, but on a writ of certiorari granted by the Supreme Court that court reversed the judgment of the district court insofar as the Williams Company was concerned and dismissed the suit as to it, but held that the East Baton Rouge Parish court had jurisdiction of the case as to the insurance company. See200 La. 1042, 9 So.2d 406. The trial court rendered a judgment against the insurance company in favor of the plaintiff for compensation for total and permanent disability at the rate of $20 per week for a period not exceeding 400 weeks, payable weekly, beginning February 26, 1941, with legal interest on the weekly installments as they mature, less a credit of $640 for compensation already paid, plus the sum of $35 for medical expenses, together with certain allowances for medical expert fees. The defendant has appealed.
While counsel for the insurance company still insist in their brief that the East Baton Rouge Parish court had no jurisdiction of the case against the defendant insurance *Page 483 
company, yet they concede, as indeed they must, that this court must follow the decision of the Supreme Court on this point.
It is admitted by the defendant that the plaintiff received a "slight strain to his back" while using a lever in aligning a building under his employment with the Williams Company and that he was paid compensation for 32 weeks at the maximum rate, but it denies that plaintiff suffered any further disability after the compensation payments were discontinued. The question at issue is the nature and extent of the disability sustained by the plaintiff. As usual in back injury cases, the medical testimony is conflicting. A brief summary of the lay and medical testimony is necessary for a proper determination of the issues in the case.
Plaintiff testified that he was standing in a pile of dirt and sand using a pry pole to help straighten a building when his left foot went down in the sand, causing him to wrench and injure his back; that he got as stiff as a board and could not bend his body, and after standing around a few minutes, he told his foreman about getting hurt and was sent to the company hospital in an ambulance.
At the hospital, his back was strapped and he returned to the hospital on two or more occasions and was treated for his back, after which he was permitted to go to his home in Livingston Parish, where he was treated by a doctor at the suggestion of the agent of the defendant insurance company which was paying him compensation. He was sent to Dr. McHugh in June, 1941, for an examination and treatment, and this doctor, after examining and making x-rays of him, turned him over to Dr. Lewis for treatment, the latter doctor putting him in a plaster cast for eight weeks, after which the doctor told him to take some exercise. He tried several light jobs, such as driving a school bus, coaching a basket ball team, and helping in a grocery store, but could not hold up at these jobs and could not sleep at night. He was sent to Dr. Caldwell in New Orleans for an examination and this doctor had x-rays made of him. Plaintiff demonstrated to the court how he was unable to bend forward, sidewise or backward, and indicated location of pain on the left side of his back.
Dr. Peters examined plaintiff and found that he had definite limitations of motion in his back and that he could not bear pressure in the lower lumbar-sacral region, particularly on the left side, and this doctor expressed the opinion that plaintiff has a disturbed or displaced intervertebral disc which will not show in an x-ray, and from the history of the case, the doctor concluded that the disability had a traumatic origin. The doctor examined plaintiff five or six times and gave as his opinion that he is permanently disabled and that he is not malingering. The doctor says that if he is mistaken in his opinion that plaintiff has a misplaced intervertebral disc pressing against his spinal cord, then he would diagnose plaintiff's condition as lumbosacral arthritis, or traumatic hysteria caused from an injury.
Dr. Lester Williams made an x-ray of plaintiff's back in January, 1942, the picture showing a roughening of the anterior superior articular surface of the third lumbar vertebra, which might be the result of previous trauma.
Dr. Thom first examined and treated plaintiff in November, 1941, and saw and treated him on numerous occasions for many months thereafter. He was in a better position than any other doctor to determine plaintiff's condition and to know whether or not he is malingering. This doctor found that plaintiff consistently walks with a slight limp and with a list of his body to the right side; that there is restricted movement in bending forward, backward and laterally, and rigidity of the muscles, with pain on pressure between the third and fourth vertebrae. The doctor gave as his opinion, after taking a history of the case and after observing plaintiff over a period of several months, that he is suffering from a protrusion or herniation of the intervertebral disc between the third and fourth vertebrae. The doctor says that the condition is permanent unless some improvement results from treatment, and he does not think that plaintiff is malingering, but thinks he is totally disabled from doing hard manual labor.
Several responsible lay witnesses who had known plaintiff for years testified that he had always been an able-bodied and hard working young man up to the time of his injury, but since the injury, he has consistently walked with a limp and in a stooped position, and has been unable to do hard manual labor.
The principal testimony produced by the defendant was that of Dr. McHugh and Dr. Caldwell. The former examined plaintiff on two occasions, in May, 1941, and in *Page 484 
October, 1942. On his first examination (during the time plaintiff was being paid compensation) Dr. McHugh found that plaintiff claimed to have a pain in his left lower back, radiating outward toward the left trochanter. The x-ray showed congenitally long processes of the fifth lumbar vertebra which come in contact with the ileum, more pronounced on the left side, which condition he thought might be symptomless, but in some instances does cause low back pain. He found hypertrophic arthritis of the third lumbar vertebra which he says is a common finding among laborers. He says that none of the x-ray findings can be attributed to an injury, however, long transverse processes increase the susceptibility to back strain and render it more difficult of correction. The doctor concludes his report of that examination by stating that he believes the plaintiff has low back pain and that he could be cured by immobilization of his back in a plaster cast, provided he has the will to get well and would not be too much influenced by the compensation factor. After this report was made, plaintiff was turned over to Dr. Lewis who immobilized his back with a plaster cast for eight weeks, after which plaintiff continued to claim inability to bend his back and complained of pain in his lower back, extending down his left leg. Compensation was discontinued in September, 1941, after which plaintiff was examined by several doctors, including Doctor Thom who treated him, and Dr. Peters.
Dr. McHugh examined plaintiff again in October, 1942, and made a report of his examination, the substance of his conclusion being that he could find nothing to support plaintiff's complaint. He gave what he calls some irregular findings which he explains fully in his testimony. The doctor admits, however, that the diagnosis of low back pain is one of the most difficult a doctor has to deal with. A careful reading of the reports and testimony of Dr. McHugh does not indicate any positive opinion or finding on his part that would seriously affect the diagnosis and opinions of the doctors who testified for the plaintiff.
Dr. Godfrey examined plaintiff in November, 1941, and found no objective symptoms other than the bent posture and muscular spasms in his back on bending forward. This doctor could give no reasons for plaintiff's complaint other than back sprain which should have healed with the treatment he had received. Dr. Caldwell examined plaintiff in November, 1942, and while he could not find any evidence of physical abnormalities or residual injuries to the bones, joints, ligaments or muscles in the back, he was of the opinion that plaintiff's habitual posture, emotional reaction, and gross exaggeration of his symptoms result from hysteria rather than from malingering, and this hysteria incapacitates him from resuming his former work.
In view of the fact that plaintiff was able to work and had no back trouble before the accident and has not worked since, he is either disabled from the accident or else he is malingering. As already stated, Doctors Thom and Peters examined and treated this plaintiff on more occasions and over a longer period of time than any other doctor, and had a better opportunity than any of them to determine his true condition, and neither of these two doctors believed that plaintiff was malingering. Moreover, there is nothing in the opinion and finding of either Dr. Caldwell or Dr. McHugh to brand the plaintiff as a malingerer. In any event, as the doctors admit, it is difficult to determine from either clinical examinations or x-rays the nature and cause of back trouble in all cases. It is difficult to believe that the plaintiff could consistently fake the limping and stooped posture over so long a period of time without this faking being detected by Doctors Thom and Peters and the other doctors who examined him.
Learned counsel for defendant make much of the failure of plaintiff to call all the doctors who examined him. The other doctors who examined plaintiff (with perhaps one exception) and were not called by him did not treat him, and had no opportunity of knowing as much of his condition as the doctors who were called by plaintiff. We see no reason to draw an unfavorable inference against either a plaintiff or a defendant for failing to call all of the doctors who might have examined plaintiff on one or two isolated occasions where a half dozen or more doctors testify and who have had a better opportunity of knowing his condition than those who are not called. As we said in the recent case of Jackson v. W. Horace Williams Co., La.App., 12 So.2d 22, where there is a conflict in the medical testimony, as is the *Page 485 
case here, there is no reason to believe that two or three more doctors could resolve the conflict or clarify the situation.
The trial judge was not only in a better position than we are to weigh and evaluate the lay and medical testimony, but he also had an opportunity, which is very valuable, to observe the plaintiff both on and off the witness stand, and determine from this observation whether or not he was faking the limp and the list in his posture. We are certainly not able to point out any manifest error in the findings of the trial judge.
For these reasons, the judgment appealed from is hereby affirmed at the cost of the defendant in both courts.