Plaintiff brought this suit against his employer, Le Blanc Brothers Contracting Company, and its insurance carrier, American Employers' Insurance Company, for compensation at the rate of $13 per week for a period not exceeding 400 weeks, less 17 weeks compensation already paid, and $250 medical expenses, for total and permanent disability which he claims to have sustained on April 2, 1941, by reason of an injury which he received while working as an apprentice bricklayer. He was injured when the scaffold on which he and several other men were working gave way while they were building an addition to Our Lady of the Lake Sanitarium in Baton Rouge. The scaffold fell from the fourth floor, a distance of some fifty five feet, and plaintiff and the other men landed on the ground among the debris and piles of lumber and brick on the ground.
It is not disputed that plaintiff received brush burns and severe contusions of his right arm, hand and wrist, and an injury to his back. He was treated by the physician of the insurance company until the latter part of July, 1941, during which time he was paid compensation at the rate of $13 per week. On July 30, 1941, Dr. Cook, the insurance company's doctor, discharged plaintiff as able to return to work, and the compensation payments were discontinued.
The Judge who decided the case below heard only a small part of the testimony, and his decision was based for the most part on a reading of the record. He was therefore handicapped, as we are, in not having had the opportunity of seeing and hearing the witnesses, lay and medical, who testified in the case. The only dispute in the case is whether or not plaintiff has been disabled from doing manual labor by reason of his injury since he was discharged. The case is on an appeal by the plaintiff from a judgment which dismissed his suit.
Plaintiff alleges that he suffered a severe sprain of his lower back, a traumatic lumbo-sacral sprain, or a sprain of the muscles and tendons of the lumbo-sacral and sacro-iliac region of his back and hypertrophic arthritis of both sacro-iliac synchondroses, and other injuries, as a result of the accident.
The plaintiff, who is a young negro about 21 years of age, testified that he fell about 55 feet when the scaffold broke and he was rendered unconscious; that when he came to himself his back was hurting *Page 37 
and his right wrist was cut; that Dr. Cook kept a bandage on his back for several months, and after Dr. Cook gave him the discharge slip, he went back to the doctor and the doctor examined him again and put another bandage on his back, but when he went to see the doctor again he could not see him because the doctor was sick. The witness saw several other doctors, among them Dr. Herpich, Dr. Frank Jones, Dr. Pickell and Dr. Caldwell. He testified when the case was tried in March and April, 1943, that he has not been able to do anything since he was hurt; that his back hurts, and if he walks a long distance, a pain runs down his right leg and his leg gets kind of numb; that his right leg seems to be a little shorter than the other one; that one of the doctors advised him to wear a belt to support his back, and that he has worn this belt ever since the adhesive tape strappings were removed; that he was rejected for the Army and placed in class 4-F; that he never had any trouble with his back before the injury and was able to work all the time.
Dr. Williams made x-rays of plaintiff's back on April 30, 1941, at the request of Dr. Cook, and reported that the pictures were negative for any fracture or dislocation and made no mention in his report of hypertrophic arthritis of the sacro-iliac articulations, but this doctor made another x-ray of plaintiff's back in April, 1942, almost a year later, and then reported the finding of the hypertrophic arthritis. Dr. Williams admitted that it is customary for the radiologist in his report to show any pathology revealed in the pictures, but he explains his failure to show the arthritic condition in his picture of April, 1941, by saying that Dr. Cook was concerned with finding out if there were any fractures or dislocations; that when Dr. Cook asked him to re-read the picture of April, 1941, after it had been revealed by the testimony of another doctor that this picture did show some arthritis, Dr. Williams made another report in July, 1942, and so testified on the trial, that a re-examination of both radiographs of April, 1941, and April, 1942, showed hypertrophic arthritis of the sacroiliac synchondroses, there being only a slight change in the condition shown in the first picture compared to that shown in the last.
This discrepancy in the two reports of Dr. Williams is important because it is shown that if there was considerable change or increase in this arthritic condition from the time the first picture was made and when the other one was made a year later, it would be a reasonable medical conclusion that the injury produced the arthritic condition, which was the opinion of some of the doctors. The arthritis could account for plaintiff's back trouble, and if that condition resulted from, or was aggravated by the fall, it is clear that plaintiff is entitled to compensation.
Dr. Pickell first saw and began treating plaintiff on November 30, 1942. On his first examination, he found plaintiff wearing a brace on his back, walking with a slight limp, and a list to the left; he had a stiffness of the muscles in the lower part of his back with an apparent tenderness. The doctor diagnosed the trouble as nucleus pulposus of the fourth and fifth lumbar intervertebral disc, which is a condition in which the cartilage pads between the bodies of the vertebrae are fragmented and forced backward, encroaching on the spinal canal, and probably at times pressing on the nerves which extend into the legs. This doctor was of the opinion that the injury produced the condition in plaintiff's back which disabled him from doing hard manual labor. This doctor treated plaintiff from the last part of November, 1942, until the latter part of January following and examined him six times. He states that he gave unusual attention and study to the case and believes that plaintiff is suffering from this trouble in his back and is honest in his complaints.
Dr. Herpich examined plaintiff in October, 1941, and concluded that he was suffering from a lumbo-sacral sprain. The doctor put him through the usual tests of flexion and extension of the back, together with lateral motion, and flexion and extension of the leg and thigh. He gave plaintiff 12 or 13 heat treatments which gave only temporary relief. The doctor examined plaintiff again in April, 1942, and he, together with Dr. Frank Jones, had Dr. Williams make the x-rays of plaintiff's back which have already been referred to as showing the arthritic condition. Dr. Jones examined plaintiff about this time, and it appears from the testimony of these two doctors that they concluded from the radiograph made by Dr. Williams that the arthritis shown therein was caused from the back injury. They had seen the report made by Dr. Williams in April, 1941, which made no reference to any arthritic condition, *Page 38 
and these two doctors were of the opinion that the arthritis developed from the injury as it takes several months for arthritis to show up after such an injury.
As already stated, Dr. Cook first treated plaintiff for about four months. Dr. Cook was of the opinion that plaintiff was able to return to work when he discharged him on July 30, 1941. However, according to the testimony of plaintiff, he went back to see Dr. Cook the following Monday after he was discharged and this doctor put another bandage on his back. While Dr. Cook makes no reference to this incident, he does state that he did not treat or examine plaintiff any more after he discharged him, and, of course, the doctor was not in a position to state what plaintiff's condition was after this time.
Dr. Caldwell examined plaintiff twice, once in April, 1942, and again in July of the same year. The substance of his report on both of these examinations is that he found a healed arthritic process in the right sacro-iliac joint which condition was present when the injury occurred, and it was his opinion that the process was not activated by the injury; that the injury which plaintiff sustained was confined to the muscles and ligaments of his lower back which have healed, and that plaintiff is now fully recovered and is able to carry on the same type of work he was doing when the injury occurred. The doctor found no condition to support plaintiff's complaints and concluded that he was exaggerating his condition.
We have the testimony of three doctors to the effect that plaintiff is suffering from a back injury which incapacitated him from doing hard manual labor; that they do not believe he is faking or exaggerating his condition. Two of these doctors, Herpich and Pickell, examined plaintiff several times and treated him over a considerable period of time. It is difficult for us to believe that this negro boy could so misrepresent his complaints of pain and consistently assume movements and attitudes over a long period of time so as to deceive and mislead these doctors. To do so would be attributing to him more intelligence and shrewdness than the facts justify.
It is rather significant that no arthritis was noticed or mentioned in the x-rays taken shortly after the accident by Dr. Williams. Doctors Herpich and Jones saw these pictures and they noticed none. It is also shown by the medical testimony that it is unusual for a young man to suffer from hypertrophic arthritis unless it has a traumatic origin. This young negro was evidently in good health and was able to do the hardest kind of manual labor before the accident. If he had an arthritic condition when the accident occurred, it is a reasonable conclusion from a preponderance of the evidence that this condition was aggravated by this fall of fifty five feet.
In any event, we cannot entirely disregard plaintiff's testimony. There is nothing in his testimony to justify us in saying that he is malingering. As we said in the recent case of Mack v. W. Horace Williams Co. et al., La.App., 12 So.2d 482, a case presenting a rather similar situation as we have here, it is difficult to determine from either clinical examination or x-rays the nature and cause of back injuries in all cases, and where the medical opinions are divided, consideration must be given to the lay testimony, as well as all other facts and circumstances shown by the record.
In our opinion, the plaintiff has shown with reasonable certainty that he is disabled from performing his usual and customary work of a bricklayer and that this disability results from the accident which he received. He is entitled to compensation and medical expenses. The insurance company paid $116.49 for medical expenses, and plaintiff has incurred medical expenses sufficient in amount to entitle him to the maximum of $250, less the amount already paid.
For the reason assigned, it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that there be judgment herein in favor of plaintiff, Anderson Pinkney Phillips, and against the defendants, Le Blanc Brothers Contracting Company and the American Employers Insurance Company, in solido, for compensation for total and permanent disability at the rate of $13 per week for a period not exceeding 400 weeks, payable weekly, less the 17 weeks already paid, the payments herein fixed to begin one week from July 30, 1941, with legal interest on each weekly payment from its due date until paid, and for the further sum of $133.51 balance due on medical expenses, together with all cost of the suit. *Page 39