It is urged in the application for a rehearing that the court was in error in stating in the original opinion that, "It is rather significant that no arthritis was noticed or mentioned in the X-rays taken shortly after the accident by Dr. Williams. Doctors Herpich and Jones saw the pictures and they noticed none."
Dr. Williams himself admitted that he did not mention any arthritis in his report to Dr. Cook on the picture of April 30, 1941, taken less than a month after the accident. Whether or not Dr. Williams noticed any arthritis in this picture when he made this report, it remains a fact that he did not report it to Dr. Cook, and in view of the fact that Dr. Williams admits that it is customary for a radiologist to report any pathology shown by the X-ray, we prefer to believe that Dr. Williams did not report finding this arthritis for the reason that he did not notice it at the time.
Dr. Cook examined the X-ray made for him by Dr. Williams on April 30, 1941, while Dr. Cook was treating the plaintiff for the insurance company, and Dr. Cook found no arthritis in this picture as is shown from the following extract from his testimony:
"A. It is my practice to examine the X-rays that are made for me by the X-ray specialist to determine for myself so far as I am able if there is any trouble shown in the X-ray. I did this with this man and although I am not an X-ray specialist, I could not see any trouble.
"Q. Doctor, in your examination of these X-rays, did you discover as of the end of April, 1941, or the first day of May that there existed any condition known as hypertrophic arthritis of the synchondroses? A. No, I don't believe that I did."
And again the Doctor testified (P. 13-14 Dep.):
"Q. Doctor, you stated that although you are not an X-ray specialist that you feel fairly capable of reading X-rays for your own purpose? A. That is correct.
"Q. You yourself examined this particular X-ray and did not discover the evidence of an arthritic condition, did you? A. That is true."
Here we have defendants' own doctor testifying that he examined the X-rays made by Dr. Williams on April 30, 1941, and he did not find any arthritis. If it be contended that Dr. Cook is not an X-ray specialist, the same may be said of Dr. Caldwell who found arthritis in this picture and who admits himself that he is not an X-ray specialist, but reads the pictures which he has made as does Dr. Cook read those which he has made for his own purpose. It was after Dr. Caldwell found the arthritic condition in this picture that Dr. Williams re-read it and also found arthritis. While Dr. Caldwell found no changes in the arthritic condition in the pictures made in April, 1941, and those made a year later, Dr. Williams found a "slight" change in the later picture compared with that of the former. Just what he means by a slight change — or no material change — is not made very clear, but it remains a fact that there is at least a slight difference in the findings of Doctors Caldwell and Williams on the pictures made on these different dates.
Our statement in the opinion to the effect that Dr. Herpich saw this picture made by Dr. Williams in April, 1941, and noticed no arthritis in it is correct as will appear from the following quotations from the testimony of this doctor:
"Q. Did you examine certain X-rays that Phillips presented to you at the time that you first examined him on October 20 (1941)? A. Yes, I did. At the time of his injury his physician (apparently Dr. Cook) had X-rays made by Dr. Lester Williams. The X-rays at that time were negative for such conditions as fractures or dislocations or any arthritic growths."
"Q. This X-ray that you examined that day did not show any signs of an arthritic condition in Phillips' back, did it? A. No."
At another place Dr. Herpich testified:
"Q. The fact that you did not find this arthritic condition on the first examination and that the first X-rays did not show this arthritic condition and later you made an *Page 477 
examination and viewed an X-ray made at a later date, does not that completely eliminate any conclusions that this arthritic condition was an old pathology? A. Absolutely so, yes.
"Q. Doctor, even if this arthritic condition was present prior to this accident on April 2, 1941, wouldn't such a fall of some fifty five feet and receiving a severe jolt and injury aggravate an arthritic condition, if it was present? A. It most certainly would."
While Dr. Herpich did state that he depended on the interpretation of the picture as shown by Dr. Williams' report, yet the above testimony shows that he examined the picture himself and he says that he feels able to detect arthritis in an X-ray.
It is true that Dr. Frank Jones did not see the picture made by Dr. Williams on April 30, 1941, but he stated that it is the duty of the radiologist who makes the picture to point out any pathology which he finds, and the fact that no mention is made in the report of an arthritic condition is an indication that none was found by the radiologist. Dr. Jones further stated that if arthritis was present at the time of the accident, the condition would be aggravated by the fall and injury which plaintiff received.
Of the five doctors who testified in the case (other than Dr. Williams who only made the X-rays), three of them examined and treated plaintiff over a good period of time. These were Dr. Cook who treated him from the time of the accident until he was discharged the latter part of July, 1941; Dr. Herpich, who examined and began treating plaintiff in October, 1941, and gave him twelve or thirteen treatments over a period of several weeks; and Dr. Pickell, who examined and began treating him in November, 1942, and continued his treatment until the latter part of January following, giving him at least six examinations during this time. The other two doctors, Jones and Caldwell, did not treat plaintiff, the former examining him only one time, and the latter examining him twice. It is obvious that the three doctors who examined plaintiff more times and treated him over a longer period of time were in a better position to determine whether or not he was and is suffering a disability than the other two doctors who did not have the same opportunity for observation.
Doctors Herpich and Pickell were of the opinion that plaintiff is suffering from a back injury as a result of the accident. While Dr. Cook discharged the plaintiff the latter part of July, 1941, believing that he was able to return to work, the Doctor frankly states that he could have been mistaken; that when he discharged plaintiff, there was nothing to indicate that he had arthritis; that an X-ray will not always show an arthritic condition, and it could be possible that his arthritic condition was caused by the trauma.
We are therefore justified in stating that a preponderance of the medical evidence is to the effect that plaintiff was not feigning a disability, but that he does suffer from a condition in his back that renders him incapable of performing hard manual labor; that his use of a stick in walking, his limping and other attitudes indicating a back injury are not faked. It was almost two years from the date of the accident to the date of trial, and it does seem that during this time, if plaintiff was faking a disability in his back, some of the doctors who treated him and examined him over long periods of time would have detected it and so testified. Even Dr. Cook would not say that plaintiff is a malingerer, but frankly admitted that he might be suffering from an arthritis as a result of the injury.
Counsel insist that because the plaintiff did not call Doctors Darby and Godfrey who, it is said, examined him in the fall of 1941, a presumption adverse to plaintiff's claim should be drawn. In fact, counsel outlines in his brief what these doctors should be presumed to testify had they been called. If any unfavorable presumption is to be drawn against plaintiff for failing to call these doctors, the same unfavorable presumption should be drawn against the defendants for failing to call Dr. W.S. Slaughter who examined plaintiff on February 24, 1942, at the request of the defendants.
We do not know the reason why plaintiff did not call Doctors Darby and Godfrey if these two doctors examined him, nor do we know the reason why defendants did not call Dr. Slaughter who examined plaintiff at their request, however, as we said in the recent case of Mack v. W. Horace Williams Co. et al., La.App.,12 So.2d 482, we do not think an unfavorable presumption should be drawn against either a plaintiff *Page 478 
or a defendant for failure to call one or two doctors who made only an isolated examination of the injured employee where several other doctors who examined and treated the employee and had a better opportunity of knowing his condition testify on both sides, particularly in back injury cases where it is conceded that the nature and extent of the injury is difficult to determine and where it does not appear that the other doctors not called could have resolved the conflict in the medical testimony or otherwise clarified the situation.
A re-examination of the evidence in the record serves only to confirm our conclusions in the original opinion, and for these reasons, the application for a rehearing is refused.