Plaintiff sues to recover workman's compensation. He alleges that while performing the duties of his employment with the defendant, on December 31, 1942, he lifted and moved a short distance a piece of railroad steel twenty feet long, weighing one hundred fifty pounds, and from the strain incident thereto the third, fourth and fifth lumbar vertebrae were fractured; that the joints, muscles and nerves in and about the sacro-iliac region were injured and impaired and arthritis has developed; and that said fractures and injuries produced, from the date of the accident, total disability to perform work of any reasonable *Page 781 
character, which, he alleges, will be permanent. He further avers that while defendant provided him with the services of a physician to alleviate his injuries, it refused and continues to refuse to pay him any compensation whatever.
Defendant denies that plaintiff was injured while in its employ to the extent of rendering him incapable to work, and, therefore, denies that it is due him any compensation at all. Its position is that plaintiff is a malingerer, purely and simply.
Defendant appealed from judgment awarding plaintiff compensation at the rate of $11.70 per week for not more than three hundred weeks. The Court found defendant's injuries temporary in character but total in effect. Plaintiff, answering the appeal, prays that the term for weekly payments be increased to four hundred weeks, contending that his disability is not only total, but permanent.
There exists some uncertainty as to the date plaintiff was injured, but we conclude, as did the trial judge, that it occurred between eleven and twelve o'clock January 1, 1943, which is one day subsequent to that alleged upon. At that time he and other workmen were engaged in loading crossties upon a cart or wagon. The piece of steel rail, described in the petition, had to be removed a few feet, as it was in the way of the workmen. Plaintiff alone undertook to do so. He describes how he did it and the effect of doing so, as follows:
"I just reached down and caught hold of it and picked it up, and I felt something that felt like it pulled loose in my back."
Two co-laborers corroborate his testimony as regards the lifting and removal of the rail. He made no immediate outcry that he had hurt himself but shortly thereafter he informed these workmen that such had happened. He continued, however, to stay on the job the remainder of the day, but says he did not do any heavy work. In this respect he is corroborated by one of his co-laborers. He did not report to work the next day nor the day following. He also testified that he reported the accident to defendant's Field Office Manager the day following its occurrence, but in this we think he is in error. We think he reported the accident to this Manager on January 4th. He was advised to report to Dr. C.M. Baker in the City of Minden, Webster Parish, for examination and treatment. At that time he complained of serious pain in the lower portion of his back but Dr. Baker was unable to discover any clinical reason for the pain. He did, however, treat plaintiff by strapping his back, and discharged him on February 8th. He advised plaintiff to return to work. He reported for work but did very little because, as he says, his back and right leg pained him too much.
In February, 1943, plaintiff employed his present counsel and was directed by him to report to Dr. C.H. Mosely of Monroe, Louisiana, for examination and X-raying. He promptly did so on February 15th. Dr. Mosely made physical examination and found evidence of injury in the back. X-ray pictures, in his opinion, confirmed this diagnosis.
The pictures made by Dr. Mosely, he testified, revealed a fracture of the fifth lumbar vertebra, into the articular facet, and complete loss of the spinous process of the fourth and fifth lumbar vertebrae. He also found evidence of other injuries to the third and fourth vertebrae. He attributes the pain of which plaintiff complains, in the right leg, to injury to the sciatic nerve. On the day of trial Dr. Mosely made another physical examination of plaintiff's back and found spasms therein, which, he says, no one, not even a physician, could simulate. This condition, he says, is directly due to the vertebrae injuries of which he testified.
Dr. Baker did not X-ray plaintiff's back until November, 1943. The pictures then made by him, he testified, do not reveal any abnormality of the spine, and likewise interpreted the pictures made by Dr. Mosely. Dr. Baker's diagnosis of plaintiff's physical condition and his interpretation of the X-ray pictures are concurred in by two other reputable physicians practicing in the City of Minden. All of them unqualifiedly testified that plaintiff is a malingerer. Dr. Cannon of Shreveport agreed with Dr. Mosely's diagnoses and X-ray interpretations.
The lower court found, as is obvious, a hopeless disagreement in the opinions of the physicians. This is not uncommon in cases of this character, regrettable as it may be. The court gave considerable weight to the lay testimony and that of Dr. J.B. Benton, who has had many years of experience in the conduct of a clinic in Minden and in reading X-ray pictures. Dr. Benton testified that he physically examined plaintiff a few months subsequent to *Page 782 
the alleged accident, and several times thereafter, from which he inclined to the view that plaintiff was not suffering from a traumatic ailment; but after viewing the pictures made by Dr. Mosely he reached the opinion that there was injury to plaintiff's vertebrae, as contended by Dr. Mosely. He thought, however, plaintiff would be well under proper treatment within eight or ten months from the date of the trial in June, 1944.
We find, as did the lower court, that the lay testimony strongly supports plaintiff's profession of disability. If he is disabled, and we believe he is, no cause has been suggested therefor save as alleged by him. He was twenty-two years of age when trial was had and to the time he claims to have been hurt there is no intimation or suggestion that he had suffered from disease or injury of serious character. He has been seen daily by some of the witnesses and less frequently by others. Those who daily associate with him testified that he was unable to work after some effort to do so, because of his physical condition. One witness, a reputable farmer who lives close to plaintiff, saw him quite often and to a substantial extent corroborates the testimony of plaintiff's kinsmen. Plaintiff has used crutches continuously since soon after being discharged by Dr. Baker.
In written reasons for judgment the lower court said:
"Either the plaintiff sustained an injury that at least temporarily disables him, or he is a malingerer of the worst type. It is unreasonable that a young negro 22 years old with a wife to support would feign disability and try to collect $11.70 a week, (which is the amount he would be entitled to under the evidence as to his earnings), when he could by working easily earn more than twice that amount. Something was said during the trial about his rejection for army service. It could be that he is feigning disability in order to evade military service, but there is no proof that this is so.
"With great respect for the ability and integrity of the doctors who testified for defendant, I am constrained to disagree with their findings in the case, and conclude that plaintiff is temporarily totally disabled to perform work of a reasonable character. His appearance in the court room where he moved about on crutches, and in apparent pain, leads to that conclusion. If the doctors had given any other reason for plaintiff's disability, such as syphillis, bad tonsils, bad teeth and the like, another conclusion might have been reached, but they stand on the statement that there is nothing the matter with him, and with this I am unable to agree."
Defendant endeavored to prove by one of its agents that he saw plaintiff plowing land for several hours. We are convinced that this agent mistook plaintiff's brother for him; that it is a case of mistaken identity.
We are of the opinion that the trial judge correctly adjudged the case, and, for the reasons herein given, the judgment appealed from is affirmed with costs.
DREW, J., is recused. *Page 893