Plaintiff alleges that while in the employ of defendant on January 25, 1945, he was accidently injured as a result of which he is totally and permanently disabled to do work of a reasonable character and is entitled to judgment for compensation not exceeding four hundred weeks at the rate of $11.44 per week. He says his injury happened in the following manner. He was tailing the resaw at defendant's sawmill when a stick of lumber about 2" x 6" 14' long, traveling with great force, struck his face, nose and head, fracturing his skull in the front and at its base, fracturing and dislocating the vertebrae of his neck, severing the skin and tissues to the bone from the root of his nose to the hair line, leaving an ugly scar about 4 inches long on his forehead and permanently injuring his brain, nerves, memory, muscles and eyes, and his eyes are weak and he has dizzy spells and no ability to think and walk around. He prays for judgment accordingly and for general relief and judgment according to law. *Page 17 
Defendant admits that its business is hazardous and that plaintiff sustained a slight injury from which it contends he recovered in ten days. It denies the wage rate alleged and says plaintiff's pay was $12.80 per week because he had contracted to work only four days a week. In other essential matters, the allegations of the petition are denied.
The case was tried on the issues tendered by the pleadings and the district judge reached the conclusion that plaintiff's weekly rate of pay was $17.60 and that his compensation should be fixed at $11.44 per week, but he concluded that plaintiff had been disabled not more than eight weeks and awarded him judgment for that number of weeks at $11.44 per week with interest on past due payments, less $38 paid plaintiff before suit was filed. The fees of plaintiff's expert witnesses are fixed in the judgment at $25 each. He complains that Dr. Moseley should be allowed $100, but we have concluded not to disturb the judgment in this respect.
From this judgment plaintiff has appealed and asks for judgment as prayed for and defendant, contending that it has paid plaintiff more compensation than it owed, has answered the appeal, praying that the judgment be reversed and plaintiff's demands be rejected, and in the alternative, that the judgment be affirmed.
[1] We are in accord with the conclusion of the district judge that plaintiff is not disabled as a result of the injury he received, and, under the evidence, the allowance of eight weeks compensation for disability appears fair.
As soon as plaintiff was injured, he was carried to the charity hospital at Alexandria, La., where he was treated by Dr. Farmer, one of the resident physicians. Dr. Farmer says there was a cut some 4 inches long extending from near the left eye to near the hair line and that he cleaned it and applied a sulfa drug, sutured the wound and gave him antitetanus serum. Before closing the wound, he examined the skull and there was no fracture at the site of the injury and plaintiff's condition was good and he walked out of the hospital after having been told to return in four days. He did return February 2nd and again on February 9th and 18th, at which time the doctor considered him well, but he still complained his vision was not good and he was dizzy, so instead of discharging him, he was told to return the following Wednesday, but he did not go back to the hospital any more.
On March 12th he went to see Dr. O.B. Owens, who had been his physician before he was injured. According to the doctor, he compalined of pain and poor vision and was given something to relieve pain and advised to see an eye specialist, but he did not follow this advice. All this time he was, so far as the record shows, up walking about. Dr. Owens, Dr. G.W. Smith, and Dr. C.H. Moseley testified that plaintiff is unable to work and Dr. Moseley produced x-ray pictures of plaintiff's head and the cervical vertebrae, on which he points out a fracture on the left side of the skull about 11/2 inches long and a fracture of the first and fifth cervical vertebrae. His pictures were made March 9, 1945.
Opposed to this medical testimony, defendant offered Dr. H.H. Hardy, Dr. W.M. Farmer, Dr. H.O. Barker and Dr. M.H. Foster, Superintendent of the hospital, but Dr. Foster did not know anything about plaintiff's condition. He identified some records from the hospital. The other three doctors are of the opinion that there is nothing wrong with plaintiff. Dr. Barker is the x-ray specialist at the Baptist Hospital. He had five pictures made of plaintiff's head and neck on April 11, 1945. He says there is no sign of any fracture of the skull and that the showings on the cervical vertebrae that Dr. Moseley calls fractures are, in his opinion, hypertrophic arthritis, the result of age.
If we count medical witnesses, they are equal in number, leaving out Dr. Foster, who did not examine the plaintiff. But witnesses are not counted, their testimony is weighed. Applying that test to the medical testimony, we hold it to be in favor of defendant. Turning to the lay testimony, the same situation prevails if we leave out the testimony of plaintiff that he is not able to work. He said he was unconscious for a short while after the accident but was normal mentally and able to walk around by the time he reached the hospital, and, so far as the record shows, he never spent a day in bed. He says he suffers more pain at night and does not sleep over four hours a night. It is well known that many people sustain injuries causing temporary unconsciousness and recover without any ill after effects. We are unable to reconcile the testimony of Dr. Moseley as to the numerous fractures he points out, with the *Page 18 
fact that plaintiff never was confined to bed at all. If he had sustained such injuries it appears that he would not have been able to be up walking around. We are not convinced that he suffered any serious brain or other injury.
We are aware of numerous cases where the medical testimony was so conflicting as to be of no benefit at all and recovery has been allowed on the lay testimony, sometimes on the testimony of plaintiff alone. Phillips v. Le Blanc Bros., et al, La. App., 17 So.2d 36; Mack v. W. Horace Williams Co., La. App., 12 So.2d 482; Harvey v. Gifford, Hill Co., La. App.,21 So.2d 780, and many other cases. Counsel for plaintiff says in his brief that the Harvey case is similar in some respects to this case, but claims the instant case is stronger than the Harvey case. We cannot agree with him on this. The writer of this opinion heard and decided the Harvey case in the district court. The medical testimony, if it had been accepted, was preponderantly in favor of defendant, but the plaintiff, Harvey, was on crutches, which it was shown he had used almost since his injury, and he apparently moved with difficulty and seemed to be in pain. Here the district judge says he observed plaintiff in the courtroom and he appeared normal.
[2, 3] The district judge, in his written reasons for judgment, does not mention any claim for the scar left on plaintiff's forehead, but in this court, counsel for plaintiff in his brief, asks that the judgment be amended so as to award the plaintiff compensation for not exceeding four hundred weeks and that he be protected to the extent of one hundred weeks compensation on account of the disfigurement, in case he should be found able to return to work before the end of four hundred weeks. Plaintiff does not in his petition pray specifically or in the alternative for this relief, but he alleges the ugly scar in his petition and offered evidence of it, including a photograph of plaintiff, all without objection, and if he has made out a case for this relief, he would be entitled to it under his prayer for general relief. We are of the opinion that he is entitled to recover on account of this scar running from near the upper part of his nose and left eye to near the hair line. The statute and decisions of our appellate courts so provide. Jones v. General Accident Fire and Life Assurance Corporation, 1 La. App. 88; Dickson v. United States Sheet 
Window Glass Co., 3 La. App. 83; Alexander v. Latimer, 5 La. App. 41; Grigsby v. Texas Co., 14 La. App. 689, 130 So. 871; 80 A.L.R. 982; 118 A.L.R. 735.
Act No. 20 of 1914, as amended, Act No. 242 of 1928, p. 358, § 8, subd. 1(d) 16, Dart's Statutes, Par. 4398, subd. 1(d) 16, provides as follows: "In cases not falling within any of the provisions already made where the employee is seriously permanently disfigured about the face or head or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as is in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
Having reached the conclusion that the plaintiff was disabled at most for only eight weeks, but that he is entitled to recover under the above cited section of Act No. 20 of 1914 as amended, we therefore affirm the judgment insofar as it awards plaintiff compensation for eight weeks beginning January 25, 1945 with 5% per annum interest on past due payments from due date, less a credit of $38 paid before suit was filed, and amend the judgment by awarding plaintiff judgment for one hundred weeks at $6.50 per week beginning at the end of the eight weeks period, with 5% per annum interest on past due payments from due date. Defendant to pay all costs of this suit.