Plaintiff prosecutes this appeal from a judgment rejecting his demand to be paid compensation for an alleged injury.
In original and supplemental petitions, he alleges that he was employed by G.E. Lindsey, or Lindsey Farm Equipment Co., at a daily wage of $4.56 on and prior to June 6, 1944, on which date he alleges he sustained an accidental injury in the following manner:
That the Lindseys had several teams doing dirt work on the right-of-way of the railroad and that plaintiff was loading slips or scrapers with dirt. While one of the teams was in a run, he had hold of the handles of the slip and it struck a stump or some object which stopped the slip and he was thrown against it, and its handles slipped from his hands and it turned over. As a result he claims that he sustained a dislocated vertebra and severe trauma to the lower abdominal region with resulting damage to his bladder and intestines and the nerve tract through the right inguinal region, with injury to the muscles and nerves of his right leg.
He alleges that the Lindseys were covered by compensation insurance with the Travelers' Insurance Company. On February 15, 1945, plaintiff filed a supplemental and amended petition seeking to make Lindsey Farm Equipment Company and G.E. Lindsey parties defendant in the case, but the order attached to his petition was not signed by the judge and no service was ever made on the Lindseys. The record does not disclose it, but we understand from the briefs that the judge declined to allow plaintiff to make them parties.
Defendant answered admitting that it is the defendant in the suit and that it had insured the Lindseys against claims for compensation for their employees and denied all the other allegations of the petitions. It then set up the special defense that if plaintiff was injured, he was not acting in the scope of his employment or performing the duties for which he was employed.
The trial of the case discloses the following facts: G.E. Lindsey or Lindsey Farm Equipment Co. furnished some mule teams and scrapers and were to furnish drivers to do dirt work for the Rock Island Railroad. Mr. Ben Jackson was track superintendent for the railroad company. Mr. Thomas Smith was section foreman. At Lindsey's request, Jackson hired the drivers for the teams and the railroad furnished the men to load the scrapers. Plaintiff had worked for the railroad before, and knew Mr. Jackson. He thought he was working for the railroad again and his counsel had some difficulty finding out by whom plaintiff was employed at the time of his injury.
The team that he was driving at the time he was injured was unruly and Leroy Fontaine, a section hand on the railroad, took over the driving and plaintiff undertook to load the slips. The team got in a hurry and the slip struck some obstruction and plaintiff claims the handle and the slip struck him in the lower abdomen and that he fell. He says he got up and tried to work again, but could neither drive the team nor load the scrapers and reported to the foreman that he was injured. The foreman says he did not report any injury.
[1] One of the defenses, in fact the main defense, is that plaintiff had been instructed to drive the team and the section hands to load the scrapers. The first issue to be settled is whether or not this is so. The negro, Fontaine, who was driving the team at the time, says the foreman told him *Page 149 
to go down and drive the team. The foreman, Smith, says he sent Fontaine down to load the scrapers. However, on cross-examination he admitted that he had seen plaintiff loading the scrapers and claims he instructed him to drive and not to load the scrapers. It is unreasonable to believe that the foreman would permit this negro to load the scrapers if it was in violation of his orders. He says he was looking at plaintiff at the time the scraper struck the obstruction. He therefore knew that plaintiff was loading the scraper and not driving. Smith has a lot to say about the orders Mr. Jackson gave plaintiff when he was hired, but Smith was on a vacation at that time and could not know anything about it except what Jackson told him. We are of the opinion that this defense must fail.
The next question is whether or not plaintiff sustained any disabling injury. Plaintiff gives an account of the accident substantially as alleged. Leroy Fontaine was driving the team at the time and was in front of plaintiff and did not see just what happened, but knew that the scraper struck some obstruction and that it got away from the plaintiff. Mr. Smith also saw the scraper get loose but says it did not strike plaintiff and that he did not fall down. Something happened to him to stop him from working at that time, and on June 14, 1944, he went to see Dr. Marvin T. Green about his condition. At that time no claim had been made for compensation. Plaintiff gave Dr. Green the history of the accident and injury. He was found to be suffering from syphilis, with considerable changes in the bony structure of his back. On December 29, 1944, Dr. Green made a report to defendant of a thorough examination of plaintiff. In his deposition Dr. Green identified a copy of his report and plaintiff filed it in evidence. This report concludes as follows:
"Diagnosis: Trauma to the lower abdomen with visceral injury of the bladder and sigmoid as evidenced by bleeding from these structures following injury. There is no resultant disability to these structures evident at this time. There is, however, a luxation or a slipping and twisting of the fourth lumbar vertebra on the fifth, with consequent nerve root pressure demonstrable over the sensory nerve distribution of the lower extremities. This disability has a definite anatomical cause and effect, and this disability will remain permanent. As a manual laborer he is at least 75 per cent disabled."
The doctor's deposition taken out of court, March 20, 1945, and filed in evidence on the trial of the case is more favorable to defendant than is the report. However, he continued to say plaintiff is disabled but he attributed his disability to arthritis instead of injury caused by the accident.
Dr. J.R. Brown testified by deposition taken out of court. He found about the same condition of plaintiff's back that all the other doctors found, but is of the opinion that the condition found is not the result of accidental injury, and that plaintiff can do normal work for a person of his age.
Drs. T.A. Dekle and R.E. Corkern testified by deposition on behalf of plaintiff. They are of the opinion that plaintiff is totally and permanently disabled to do manual labor and they connect his disability with the injury he described to them.
[2] From all the evidence, medical and lay, we find no difficulty in reaching the conclusion that plaintiff is disabled to do common labor which is all he is qualified to do. Whether or not this disability is the result of the injury he received or is the result of disease and age, presents more difficulty.
[3] We believe the evidence as a whole justifies the conclusion that plaintiff sustained an accident in substantially the manner alleged and that there was some injury to him. He testified that for several weeks after the injury, he passed blood through kidney and bowel movements, which he had not done before. So far as the record shows, he had no treatment for these symptoms. The fact that they cleared up in a few weeks indicates that they were caused by the accidental injury. *Page 150 
It is entirely possible and we think probable that the syphilitic condition he had was to some extent accelerated by the injury sustained. All the doctors found about the same condition in plaintiff's back which they described as arthritis and a luxation or slipping and twisting of the fourth lumbar vertebra on the fifth, with nerve root pressure demonstrable over the sensory nerve distribution of lower extremities, which accounts for the pain and numbness in the right leg.
All the doctors thought the condition of plaintiff's back had been developing over a period of months or years and that he had arthritis before the date of the accident. However, if he was not disabled before the accident and was disabled afterward, it is reasonable to conclude that the disability is the result of the accident.
After the evidence was all taken, plaintiff filed a plea of estoppel on the following grounds:
"That the defendant in this cause is estopped from denying liability to this plaintiff for the reason that the evidence shows that at the time of his injury, he was doing work that he had been ordered to do by his superior, even though it might not have been the work that his employer had contemplated at the time he had been hired."
This plea was overruled. For the reason that we have reached the conclusion that plaintiff was working in the course and scope of his employment, it is unnecessary to consider this plea.
In this court, plaintiff has filed a motion to remand the case for the taking of further evidence. The conclusion we have reached renders it unnecessary to consider this motion to remand.
[4] We recognize the familiar and oft quoted rule that a plaintiff is required to make out his case by a preponderance of the evidence. With great respect for the finding of the trial judge on questions of fact, we are forced to disagree with him when he holds that plaintiff has not met the burden of proof. The trial judge in the course of his reasons for judgment says:
"In this class of cases, no different from others, the plaintiff assumes the burden of proving his case by a preponderance of evidence. Plaintiff has not met this requirement. He has failed to show that he received such injury as he complains of. Also that such injury caused or contributed to his present physical condition. Adopting this view of the facts we can do nothing but reject the demands of plaintiff."
Certainly plaintiff made out his case by his own testimony. In many cases where medical testimony was conflicting, claimants have been awarded judgments on the lay testimony, sometimes on the testimony of plaintiff alone. Kennedy v. Bayou Rapides Lumber Co., Inc., La. App., 25 So.2d 16, 18; Phillips v. Le Blanc Bros. Contracting Co., La. App., 17 So.2d 36; Mack v. W. Horace Williams Co., La. App., 12 So.2d 482; Harvey v. Gifford, Hill Co., La. App., 21 So.2d 780.
Accordingly we find that plaintiff was working in the course and scope of his employment at the time of the accident and that as a result of the accident and injury he is totally and permanently disabled to do work of a reasonable character.
There is also dispute as to the wage plaintiff was to receive. He alleges it was $4.56, which for an eight-hour day would be at the rate of 57 cents per hour and a forty-hour week would amount to $22.80. Mr. Jackson who employed him for Lindsey says he was to receive $3 per day or $18 per week, and $1 per week for looking after the teams. This would total $19 per week. We find this last sum to be the wage he was to receive.
For the reasons assigned, the judgment appealed from is reversed and there is now judgment in favor of plaintiff, Hudson Smith, and against the defendant, Travelers' Insurance Co., for $12.35 per week during the period of his disability, not to exceed four hundred weeks, beginning June 6, 1944, with interest at the rate of five per cent per annum on past due payments, and for all costs of this suit in both courts. The fee of the attorney for plaintiff is fixed at twenty per cent of the amount collected, not to exceed $1,000. *Page 151