131 So.2d 593 (1961)
Lee Roy FRUGE, Plaintiff-Appellant,
v.
HUB CITY IRON WORKS, INC., et al., Defendants-Appellees.
No. 286.
Court of Appeal of Louisiana, Third Circuit.
June 19, 1961.
Rehearing Denied July 12, 1961.
*594 Willis & Willis, by J. B. Willis, St. Martinville, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendants-appellees.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is a suit under the Louisiana workmen's compensation act by an injured employee to recover compensation for disfigurement *595 and for impairment of a physical function. Made defendants are the employer and its compensation insurer.
The plaintiff appeals from a trial court award, urging that the weekly amount of compensation awarded is inadequate and also that the trial court incorrectly disallowed his claim for penalties and attorney's fees arising out of the allegedly arbitrary nonpayment of compensation. The defendants answer the appeal, arguing that no compensable impairment resulted from the accident, and, alternatively, that said defendant employer and its compensation insured, because of the continued payment of wages to the employee following the accident, should be allowed credit for such wage payments against any compensation liability.
Plaintiff seeks an award under LSA-R.S. 23:1221(4) (p), which provides:
"In cases not falling within any of the provisions already made [i. e., for disability or for specific injuries], where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of, specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."
The trial court summarized the facts and applicable jurisprudence as follows:
"There is no question but what the loss of teeth is compensable under the above cited section of Louisiana Workmen's Compensation Act, as is recognized in the recent case of Macaluso v. Schill-Wolf son, Inc., La.App., 56 So.2d 429, and the cases referred to and discussed in that opinion. It is also clear that in cases involving serious permanent impairment of a physical function, the Court must award compensation for a period of one hundred weeks, but is allowed discretion in the amount of such compensation. Odom v. Atlantic Oil Producing Company, 162 La. 556, 110 So. 754.
"Dr. Dupuis testified by deposition that plaintiff's two upper front teeth, to which an already existing bridge was anchored, had to be removed as a result of this blow, and that the crown of another front tooth was broken. It was his opinion, however, that this was the extent of plaintiff's injuries as a direct result of the accident, and that the pyorrhea which he found to exist in the upper jaw was the sole and only cause for the extraction of all of plaintiff's remaining upper teeth. Upon perceiving the condition of plaintiff's upper teeth, it was his recommendation that they all be extracted and a full denture supplied, which he did.
"In view of this positive testimony, the Court cannot agree with the position taken by counsel for plaintiff that the extraction of all of plaintiff's upper teeth was the result of this blow. Regardless of this fact, however, the loss of two upper teeth to which his permanent fixed bridge had been anchored, and the loss of the crown of another tooth does constitute, in my opinion, a serious permanent impairment of a physical function, for which Lee Roy Fruge is entitled to compensation. The maximum to which plaintiff would be entitled under the law is one hundred weeks at the rate of $35 per week, plus all medical expenses. This Court does not feel, however, that such an allowance would be reasonable and in proportion to the compensation specifically provided by the Workmen's Compensation Act in cases of specific disability and, consequently, has concluded that compensation in this case should be fixed at an allowance less than the maximum. [Italics supplied by the Court of Appeal.]
"There is no hard and fast rule to be followed in such matters. Here, the plaintiff was suffering from a disease which necessitated removing all of his upper teeth remaining after the accident, and which were actually unaffected by the blow which *596 he received to his mouth. He had previously lost some of the teeth, for which he had compensated with a fixed bridge. He did lose two teeth to which the bridge was anchored, thus making it apparent that the industrial accident suffered by him did contribute substantially to the impairment of a physical function which he now experiences.
"It is my opinion that plaintiff should be compensated for this injury at the rate of $20 per week from the date thereof for a period of one hundred weeks. * * *"

I.
We agree for the most part with our trial brother's conclusions, except that in our opinion the plaintiff's weekly award should be increased to $35, the statutory maximum.
In the italicized portion of the trial opinion above quoted, it was indicated that the rate of weekly compensation should be fixed, in proportion to the seriousness of the impairment of the physical function, with relation to the maximum compensation rate of $35.00. However, in determining the rate of weekly compensation payable for such impairment, "the award of the percentage of loss is to be based upon a percentage of 65% of the full wages paid rather than upon a percentage of the weekly rate of workmen's compensation payable for total disability * * *; although of course the weekly rate thus arrived at shall not exceed the maximum statutory rate of $35 per week, LSA-R.S. 23:1202". Francois v. Circle Drilling Company, La.App. 1 Cir., 112 So.2d 771, 774 (citations omitted). In the present instance, therefore, the award is to be based, in proportion to the seriousness of the impairment, upon 65% of the plaintiff's established weekly wage rate of $96, and not upon the $35 maximum compensation rate.
In the second place, we find that, as well as the loss of the two upper front teeth, the extraction of all of the plaintiff's upper teeth was a result of the accident. Before it, the plaintiff had lost two of the four important upper front teeth, which had been replaced by a stationary bridge attached to the other two upper front teeth. In the accident, the plaintiff was struck in the mouth by a sledge hammer, as a result of which the bridge was smashed and the plaintiff's other two front teeth were broken and required to be extracted (P-3, Tr. 26; 41; 51; 55; 92; 94-95), and the other back teeth were loosened (Tr. 57, 113-114).
Thus, as the dentist testifying for the defendants admitted, the plaintiff had sufficient teeth before the accident to perform the usual functions of teeth, whereas the accident caused the loss of the other two front teeth additional to the two earlier lost, so that there was a serious and permanent impairment in the function of masticating food. Tr. 49. The plaintiff further complained of difficulty in speaking and in adjusting to the use of the upper plate used to replace the upper teeth, all the remaining of which were extracted subsequent to the accident.
Although the defendants-appellees rely upon the attending dentist's opinion that the extraction of the remainder of the upper teeth was entirely due to a pre-existing condition of pyorrhea, in his initial report to the plaintiff's employer (see P-3, Tr. 26), this witness had considered the removal of these additional upper teeth as an incident to the treatment prescribed by him for the injuries accidentally received. He testified to such effect also in his deposition introduced at the trial (Tr. 45, 51, 58), explaining that he could have supplied either a new four-tooth stationary bridge, or else (after extracting the remaining upper teeth) a full denture, which latter treatment he recommended both to the employer and to the employee as more suitable because of the deteriorated condition of the plaintiff's gums and remaining teeth.
Although the defendant contends that the employee is not entitled to compensation for the additional serious impairment of physical function sustained by the plaintiff *597 because the rest of his upper teeth were removed as well as those injured in the accident, we regard such an argument to have been substantially answered in Macaluso v. Schill-Wolfson, Inc., La.App., 56 So.2d 429, by our brethren of the Orleans Court when it awarded maximum compensation where dentures had been supplied to replace not only some sixteen teeth broken in the accident but most of the other teeth which had been lost previously. There, it was stated, 56 So.2d 431-432:
"* * * consequently, since prior to the accident plaintiff had sufficient teeth to permit him to perform all of the usual functions of teeth, it is proper to hold that his present condition is chargeable to the accident.
"The situation is much the same as that which is found where an employee, prior to an accident, suffers from some latent disease or minor physical disability but is able to perform all that is required of him and, as a result of an accident, the condition is so aggravated that the employee is unable to continue to do the same work. In such case compensation is awarded because of the fact that the accident brought to light a condition which, except for the accident, might never have come to light and which possibly might never have affected the ability of the injured party to perform all of his usual physical functions."
Further, when the medical treatment for the accidental injuries is cause in fact of the final condition of the employee, such residual is in itself considered a result of the accident and therefore compensable, even where (which we of course we do not imply to be the case here) caused subsequent to the accident by negligent treatment. See Malone, Louisiana Workmen's Compensation (1951), Section 233 (p. 282).
We therefore feel that the plaintiff is entitled to recover weekly compensation at the rate of $35 instead of $20, taking into account both that he suffered a substantial impairment of a physical function and also that the award must be fixed with relation to 65% of his weekly wages of $96 per week rather than to the statutory maximum of $35. The judgment will be amended accordingly.

II.
By answer to the appeal, the defendants-appellees alternatively contend for the first time that they are entitled to credit for the continued payment of full wages to the present employee when he returned to his usual duties after being off work for only three days because of the accident. (It is not suggested by any party that the employee was disabled for longer than three days, which disability of less than one week is not compensable under the statute, LSA-R.S. 23:1224; nor is it contended that he did not fully earn the wages paid to him.)
We find no merit in this alternative contention. Our Supreme Court has repeatedly held that wages actually earned may not be considered as compensation, either for purposes of prescription or for the allowance of credit to the employer against its compensation liability. Wallace v. Remington Rand, 229 La. 651, 86 So.2d 522; Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; D'Antoni v. Employer's Liability Assur. Corp., 213 La. 67, 34 So.2d 378; Thornton v. E. I. DuPont, 207 La. 239, 21 So.2d 46. See also: White v. Calcasieu Paper Company, La.App. 1 Cir., 96 So.2d 621, certiorari denied; Myers v. Jahncke Service Company, La.App.Orleans, 76 So.2d 436, certiorari denied; Scalise v. Liberty Mut. Co., La. App. 1 Cir., 84 So.2d 88 (where the jurisprudence concerning the question is extensively analyzed). Cf. also Woodson v. Southern Farm Bureau Cas. Ins. Co., La. App. 2 Cir., 121 So.2d 571, and Livaccari v. Fidelity & Cas. Co., La.App.Orleans, 118 So.2d 275, certiorari denied, where *598 credit was denied, although upon a different rationale.
As the D'Antoni, Thornton, and Scalise cases indicate, if full wages are paid as a gratuity for the performance of lighter work, then the continued wages may be treated as compensation for the purposes both of interrupting prescription and also as a credit against the employer's compensation liability. Employers have thus been allowed credit against their compensation liability for the continued payment of wages. See e. g. Broussard v. Dumas Chevrolet Company, La.App.Orleans, 120 So.2d 863, certiorari denied; Walters v. General Accident & Fire Assur. Corp., Ltd., La.App. 1 Cir., 119 So.2d 550 (discussing the credit cases extensively), certiorari denied; Smith v. Houston Fire & Cas. Co., La.App. 2 Cir., 116 So.2d 730. But the basic reason is, as stated in the Walters case (which extensively summarizes the credit jurisprudence), 119 So.2d 557:
"* * * When the wages paid a disabled employee are more than commensurate with the services rendered and the employee is not actually earning all of his pay, then there is a reasonable inference that the wages paid were intended as payments in lieu of or in the nature of compensation. Under the facts herein, we find that there was a relationship from which it can be implied that the wage payments made were in lieu of compensation, so as to interrupt the accrual of prescription. It constituted a recognition by the employer of the employee's industrial disability, and an implied agreement to pay and to receive these wage payments in lieu of compensation.'"
This is not the situation before us. There was no such payment of unearned wages as would authorize any implication that they were intended in lieu of the defendants' compensation liability.
But, further, an employer cannot be entitled to credit for fully earned wages paid to a nondisabled employee against any claim by the latter for disfigurement or impairment of a physical function, because the employee is entitled to recover compensation for such disfigurement or impairment even though he returns to work and continues to earn full wages. Although compensation paid for disability should be deducted from the payment of benefits for impairment or disfigurement (LSA-R.S. 12:1223; Francois v. Circle Drilling Company, La.App. 1 Cir., 112 So.2d 771), nevertheless the liability for payment of compensation for disfigurement or impairment is independent of and in addition to any liability for temporary disability arising out of the same accident (see Francois case, above-cited; Kennedy v. Bayou Rapides Lbr. Co., La. App. 2 Cir., 25 So.2d 16; Malone, Louisiana Workmen's Compensation 1951, Sections 283, p. 362, and 284, p. 363).

III.
By answer to the appeal, the plaintiff-appellant renews his demand for the imposition of penalties and attorney's fees by reason of the arbitrary non-payment of compensation undoubtedly due. LSA-R.S. 22:658. Our learned trial brother had denied this claim because of the insurer's "inability to assess the amount of compensation to be paid for such impairment of a physical function" prior to a determination by the trial court and because the insurer had "attempted in good faith to negotiate a settlement of this matter". Tr. 67.
Conceding that there may have been a reasonable dispute as to the weekly amount of compensation due (because of, for instance, the question as whether the removal of the uninjured teeth was attributable to the accident), there can be no serious question but that the loss of two upper front teeth, which perform important functions in mastication, constitutes a compensable impairment of a physical function. Odom v. Atlantic Oil Producing Company, 162 *599 La. 556, 110 So. 754; Sadler v. May Bros., La.App. 1 Cir., 185 So. 81. Since the evidence reflects without serious dispute that the loss of these two front teeth was a direct result of the accident at work, we do not believe that the defendant insurer had any reasonable defense to the claim for some compensation arising out of their loss. The present situation is thus distinguishable from Ousley v. Employer's Mutual Liability Ins. Co., La.App. 1 Cir., 121 So. 2d 378, where penalities were not allowed for the failure to tender compensation for a slightly disfiguring scar, because the insurer's defense was not insubstantial that such slight disfigurement was non-compensable.
As a matter of fact, although for the first time on appeal the defendant's able counsel urges that the continued payment of wages by the plaintiff's insurer was a credit satisfying the insurer's liability to pay weekly compensation (which contention we have rejected), the insurer's principal defense against a demand for penalties because of the non-payment of compensation is that the insurer had offered to compromise the plaintiff's claim prior to suit in the amount of $750.
It is well settled, however, that a failure to pay or to tender an amount for which the employer is undoubtedly liable under the compensation act is arbitrary or unreasonable so as to require the imposition of statutory penalties whenever such failure is without legal basis and there is no serious question upon the merits that the employee is entitled to payment of such compensation benefits. Seal v. Lionel F. Favret Co., 238 La. 60, 113 So.2d 468; Humphreys v. Marquette Cas. Co., 235 La. 355, 103 So.2d 895; Fruge v. Pacific Employers Ins. Co., 226 La. 530, 76 So.2d 719; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Fontenot v. Travelers Ins. Co., La.App. 3 Cir., 125 So.2d 664; Darby v. Johnson, La.App. 1 Cir., 118 So.2d 707; Hale v. Republic Drilling Co., La.App. 1 Cir., 109 So.2d 268; Cain v. Employers Cas. Co., La.App. 2 Cir., 96 So.2d 527, affirmed, 236 La. 1085, 110 So.2d 108; Patterson v. Cargo Services, Inc., La.App.Orleans, 95 So.2d 49; Gloston v. Coal Operators Cas. Co., La.App. 1 Cir., 85 So.2d 100, certiorari denied.
The offer of a sum in compromise, by acceptance of which the plaintiff would be required to release his claim for a greater amount of compensation alleged to be due, is not a tender such as will relieve the defendant insurer from the assessment of penalties for the arbitrary non-payment of compensation undoubtedly due. For "Generally, a tender, in order to be effective, must be absolute and unconditional. * * * A tender accompanied with some condition * * * which the tenderer has no right to make, such as a demand that the creditor relinquish a legal right, is invalid; and, likewise, it is not a good tender where a sum is offered `as a settlement', or in full discharge * * *". 86 C.J.S. Tender, § 32, p. 573. See Collins v. Employers' Liab. Assur. Corp., La.App. 1 Cir., 116 So.2d 851, 855, summarizing Louisiana jurisprudence that a tender conditioned upon the other party's releasing a right to claim a greater sum does not constitute a tender for purposes of avoiding the imposition of legal interest and court costs.
Under LSA-R.S. 22:658, an insurer arbitrarily failing to pay compensation within sixty days after satisfactory proof of loss is subject to a penalty of 12% damages on the unpaid amount, together with reasonable attorney's fees for the collection of the claim. Evidence was introduced that one thousand dollars is a reasonable attorney's fee for representation of the plaintiff in the prosecution of this claim, including upon appeal, which award as attorney's fees we believe to be justified by the record.

IV.
For the foregoing reasons the judgment of the trial court is amended so as to increase *600 the amount of weekly compensation awarded the plaintiff from twenty to thirty-five dollars; and it is further amended so as to award the plaintiff judgment against the defendant insurer for penalties in the amount of twelve per cent on all weekly payments now sixty days overdue, with like penalties on such payments which may in the future become sixty days overdue, together with attorney's fees payable to the plaintiff in the amount of one thousand dollars. All costs are to be paid by the defendants-appellees.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.