TATE, Judge.
The plaintiff sues his employer and the latter’s compensation insurer for workmen’s compensation benefits. The defendants appeal from adverse judgment.
The plaintiff slipped and fell while at work on a drilling rig. His initial back injury was cured without residual.
The substantial question of this appeal' concerns the plaintiff’s claim for compensation for an additional injury, the loosening of his teeth, alleged to have resulted from his jarring fall.
*352 The trial court awarded the claimant 100 weeks compensation at the maximum rate under LSA-R.S. 23:1221(4) (p), which provides for awards for nondisabling injuries where nevertheless the usefulness of a physical function is seriously permanently inpaired. If indeed the claimant lost his teeth as a result of the accident at work, the award made by the trial court is correct. See Frugé v. Hub City Iron Works, Inc., La.App. 3 Cir., 131 So.2d 593, certiorari denied.
Able counsel for the defendants-appellants principally contends (1) that the accident is not sufficiently proved and (2) that, at any rate, the evidence does not sufficiently prove a causal relationship between the plaintiff’s fall at work and the loss of all his teeth.
As to the evidence, the plaintiff testified that his feet slipped out from under him on the oily drilling rig, and that he sat down hard on his buttocks with a heavy, jarring bump. He told his foreman of his fall, and within twenty minutes was sent from the job-site to the hospital, where he arrived within an hour or so. The examining physician found the claimant to be in severe pain, with severe bruises on his lower back. The accident at work is undoubtedly proved.
With regard to the claim for loss of teeth, the evidence shows:
The claimant remained in the hospital for his back injury for four days, receiving pain-killing shots every few hours. When he was discharged, he was given pain-relieving pills because of his back condition. This condition, however, cured without residual within three weeks.
The claimant Daigle states that, at the time he fell, his teeth came together with a hard snap, so much so that he thought he must have hit his jaw against some of the drilling-rig furnishings. (However, there was no jaw-bruise.)
Daigle was immediately brought to the hospital that night. The following morning he mentioned to members of his family that his teeth were loose. Because he believed the tooth condition would cure itself, Daigle did not at this time report it to his attending general practitioner, who was treating him for his back only, and who did not examine the mouth and jaw area.
The loose-tooth condition persisted, however, and therefore the claimant reported to Dr. H. F. Guilbeaux, his family dentist, two weeks after the accident.
On Dr. Guilbeaux’s initial physical and X-ray examination, this dentist found “quite a few of his [Daigle’s] teeth were loosened, evidently from the jar, from falling and bringing his teeth together, traumatic condition. We found 15 or 16 had been loosened that were injured.” Tr. 21. The dentist further felt that a jarring injury from sitting down sufficiently hard to cause bruises on the buttocks, was a reasonably probable cause of the loose-tooth condition he found in the claimant’s mouth, Tr. 22. And he further felt that, although in most cases, really severe pain would result, this varied very much with the individual concerned, so that the claimant’s failure to mention the other injury to the attending physician was explainable if “something else was hurting him more; [such as,] unless his back was hurting him more.” Tr. 26.
In this dentist’s best judgment, it was necessary to remove the loosened teeth. As a result and because of the state of the remaining teeth, in the dentist’s best judgment it was also medically advisable to remove the rest of the claimant’s teeth, in order to afford the claimant the use of a full set of dentures.
 We think the trial court correctly concluded that the claimant proved by a preponderance of the evidence that the loss of his teeth was the proximate consequence and a reasonable result of his injury at work, so as to entitle him to compensation for permanent loss of a physical function.
In urging that the trial court committed error in this regard, the appellants prin *353 cipally contend — based on various excerpts from the testimony, and on Daigle’s failure to report his mouth injury to the doctor treating him for his back — , that the trial court was in error in believing the testimony of the plaintiff Daigle, his attending dentist, and the witnesses corroborating his complaints of mouth injury.
Instead, the appellants insist, the trial court should have believed the testimony of Daigle’s supervisor insofar as it partly discredited the claimant’s testimony, as well as the testimony of a dentist in a neighboring city, who examined the claimant only once, and then almost three months after the accident, at the request of the defendants-appellants for purposes of this litigation.
As to this latter specialist, the principal purport of his testimony relied upon, is (1) that, if it was necessary to remove Daigle’s teeth, this was probably due to a pre-exist-ing pyorrheal condition, (2) that really it was not necessary to remove the teeth, based on such dentist’s interpretation of the X-rays taken by Dr. Guilbeaux some three months earlier, and (3) that, if Daigle had really been injured as he claimed, he should have suffered such severe pain as a result of the mouth injury, as to cause him to complain of it to the attending physician at the time he was admitted to the hospital for his painful and seriously bruised back.
In the first place, that a pyorrheal condition may have contributed to the loss of the teeth, or that there may be a difference in dental opinion as to whether the teeth should have been removed — are not circumstances which justify the denial of compensation, when all of the teeth are actually removed as a result of the consequences of the accident. See Frugé v. Hub City Iron Works, Inc., cited above.
In the second place, the testimony of the defendants’ dental expert itself indicates that he himself could not diagnose the loosened or non-loosened condition of the teeth “definitely”, Tr. 83, or “with certainty”, Tr. 78, when he examined the X-rays taken by Dr. Guilbeaux three months before, so that therefore it would “definitely * * be necessary to conduct a physical examination in connection with X-ray examination to actually determine” whether the teeth were loose, Tr. 79, (as was done by the attending dentist in reaching his own diagnosis).
The defendants’ medical witness further admitted that it was quite possible that the patient, due to the severe shock, would not notice the pain for “the first couple of hours” after the accident, Tr. 91, and that painkilling shots (such as were given for the back over the four days hospitalization) could also alleviate the mouth pain, Tr. 91. He further testified, that, due to a pyorrheal involvement of the teeth (which he himself had diagnosed from the earlier X-rays of Dr. Guilbeaux), it would take a lesser blow, and it would be easier to loosen the teeth by a jarring fall, than if such were in good condition, Tr. 91, 93.
While we appreciate the force of the appellants’ able argument, the testimony upon which the appellants rely is not sufficient to cause us to find that the trial court committed error in accepting instead the testimony of the attending dentist (whom even the defendants’ specialist admitted was in a better position to determine the looseness of the teeth, Tr. 93), and of the other witnesses testifying in favor of the plaintiff’s position, whose credibility was evaluated favorably by the trial court.
For the foregoing reasons, we affirm the judgment of the trial court awarding compensation to the plaintiff. The costs of this appeal are to be paid by the defendants-appellants.
Affirmed.