REID, Judge.
This action was originally filed by Hollis Tuggle, Sr. against United States Fidelity & Guaranty Company, the workmen’s compensation insurer for C. M. McCarstle, doing business as Ace Armature Works, seeking to recover workmen’s compensation benefits allegedly arising out of two *672 separate accidents while in the employ of Ace Armature Works. First, plaintiff alleges he is entitled to $35.00 per week for 100 weeks, as the result of an accident on June 1, 1966, when he was helping move a 900-1000 pound armature with an electrical hoist, and the chain holding the armature slipped, throwing all the weight of the armature on plaintiff, causing him to suffer a rupture. Second, plaintiff alleges he is entitled to $35.00 per week for 300 weeks, as the result of an accident on or about December 1, 1966, when an elevator which he was helping install fell on him. Plaintiff alleges that following the first accident he was sent to the company doctor and then hospitalized for approximately seven days, at which time he underwent surgery, and that as a direct result of the injury one of his testicles had to be removed. He states that after about five weeks he was discharged for light duty and returned to work with Ace Armature Works.
Plaintiff alleges that following the second accident he was again sent to the company doctor who treated him and sent him back to work, and that at the time of the filing of his petition he was still suffering severe pain and was under the doctor’s care.
Plaintiff filed a supplemental petition making his employer a party defendant also, and alleging that a little over a week after the filing of his first petition his employer, Mr. McCarstle, instructed plaintiff to either settle his case immediately with the employer’s insurance company or plaintiff would be fired; that when plaintiff referred Mr. McCarstle to his attorney, Mr. McCarstle fired plaintiff; and that because of the collusion between United States Fidelity & Guaranty Company and Mr. McCarstle, plaintiff suffered considerable damages, and prayed for damages in the sum of $125,000.00.
Plaintiff’s supplemental petition further alleged that because of the second accident referred to above he had suffered total disability to his head and neck and, therefore, he was entitled to receive workmen’s compensation benefits at the rate of $35.00 per week for 400 weeks, less benefits previously paid, plus medical expenses.
United States Fidelity & Guaranty Company and C. M. McCarstle, d/b/a Ace Armature Works, filed a peremptory exception to plaintiff’s supplementary and amending petition on the grounds that plaintiff’s original petition was for workmen’s compensation based on alleged injuries sustained while in the employ of Ace Armature; that plaintiff’s supplemental and amending petition asserted an action in tort against the same defendants; that insofar as the supplemental petition attempted to assert a tort action against the defendants, it disclosed no cause of action; and prayed for judgment rejecting plaintiff’s tort demand.
Defendants’ exception was sustained and plaintiff’s amended petition insofar as it asserted a tort action and' damages was dismissed, and plaintiff’s rights under that portion of his amended petition which asserted claims under the Workmen’s Compensation law were reserved.
In the defendants’ answers to plaintiff’s request for admissions and to plaintiff’s petition, it was denied that an accident occurred either on the first of June 1966 or on the first of December 1966, as alleged by plaintiff, which resulted in any injury to plaintiff, and it was further alleged that plaintiff lost no time from his work as a result of the alleged second injury and that he was paid full wages by his employer until his employment terminated.
For written reasons assigned, judgment was rendered in favor of the defendants and against plaintiff, dismissing plaintiff’s suit at his cost, from which judgment plaintiff has appealed.
Appellant’s brief sets forth two errors, first, that the lower Court was in error in holding that the loss of a testicle is not compensable under the workmen’s com *673 pensation law, and, second, that the lower Court was in' legal error in holding that the second accident (on or about December 1st, 1966) did not happen. We will take up these specifications of error in that order.
Plaintiff’s claim for the loss of his testicle is founded upon the provisions of LSA-R.S. 23:1221(4) (p), which reads as follows:
“(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.”
If the plaintiff’s injuries did result in seriously permanently impairing the usefulness of a physical function, he would be entitled to the one hundred weeks compensation provided by the quoted statute, less, of course, whatever compensation had already been paid him.
However, in this connection the trial Judge found as follows, to-wit:
“Dr. Mosely, who testified for plaintiff, stated positively that the operation and removal of plaintiff’s testicle did not in any way affect the plaintiff’s physical functions and not in any way affect his ability to perform his usual work. Dr. Holden, who actually performed the operation, was not called by plaintiff, the presumption is that his testimony would not be favorable to plaintiff.”
Against the testimony of Dr. Mosely, who was an expert witness called by the plaintiff, we have the testimony of plaintiff and his wife to the effect that his sex life had been seriously impaired by the injury.
Our courts have repeatedly held that the lay evidence must give way to expert testimony in situations of this kind, especially in view of the fact that in this case both the plaintiff and his wife were very interested witnesses and stood to win or lose by their testimony.
Counsel for plaintiff states in her brief that the loss of a testicle resulting from an accident in the course and scope of employment is res nova in Louisiana law and has never been squarely passed on by the courts. She admits the existence of two cases which she claims touch upon this point, namely, the case of Chapman v. Peavy-Wilson Lumber Co., 14 La.App. 702, 130 So. 874 (1930), and Horn v. Venable, La.App., 142 So. 615 (1932). In Chapman v. Peavy-Wilson, supra, plaintiff had suffered a venereal disease which caused the loss of a testicle and the said loss was not the result of his accident and, therefore, was not compensable.
We believe the case of Horn v. Venable, supra, is in point. This case is cited by the appellee, and in our opinion passes directly on the question of whether or not the loss of a testicle is compensable. In this case the plaintiff received injuries, namely, a left inguinal hernia. He was operated on for this hernia, and in addition, the physician found that he had varicose veins which had no connection with the injury and he talked the plaintiff into letting him perform both operations at the same time. As a result of this operation, removing the varicose veins, plaintiff’s left testicle became completely atrophied. In its decision the Court held as follows:
“In addition to this compensation for total disability for 21 weeks, plaintiff claims further compensation for 100 weeks on account of the loss of his left testicle, and bases it on section 8, subd. 1(d), par. 16 of the Workmen’s Compensation Law (as amended by Act No. 242 of 1928, p. 357). According to the testimony of all the physicians in the case, this loss has not seriortsly permanently impaired any of plaintiff’s physi *674 cal functions, and it is not, therefore, compensable.”
In addition, appellant cites two cases in support of the legal proposition that “when a physical function is seriously permanently impaired, the workman is entitled to workmen’s compensation for 100 weeks,” and in support thereof cites the cases of Fruge v. Hub City Iron Works, La.App., 131 So.2d 593 (1961), and Howard v. Globe Indemnity Co., La.App., 147 So.2d 912 (1962).
An examination of these cases shows that they were on an entirely different set of facts, and while that is the correct law, the facts in the instant case simply do not come under these provisions.
In addition, appellant cites in support of his claim that the loss of a testicle is compensable under LSA-R.S. 23:1221, Section (4), Subsection (p), the cases of Golden v. Starns-McConnell Lumber Corp., 172 So.2d 78 (1965), and Daigle v. Blasingame, La.App., 162 So.2d 351 (1964). A reading of these two cases discloses that the facts had nothing to do with the question of the loss of a testicle, but involved the permanent impairment of the physical functions of other parts of the anatomy, and the Court did hold that the law was applicable. Both of these last two cases involved the loss of teeth, which, of course, would have a permanent effect upon his eating and masticating his food.
This brings us to the second error complained of, namely, that the Judge erred in finding that the second accident did not happen.
There are only two eye witnesses to the “second accident,” namely, the plaintiff himself, and one James G. Pino, who was a disinterested witness, and who was present at the time and place of the alleged accident. Very obviously the trial Judge believed the testimony of Mr. Pino and disregarded that of the plaintiff.
At the time of the alleged second accident, plaintiff was assisting Pino in some carpentry work that Pino was doing for plaintiff’s employer. Plaintiff claimed that a two by four used by Pino to line up a rafter fell and hit him on the head and neck and caused his injuries. Plaintiff testified that Pino was using a two by four as a lever to lift that portion of the floor where the elevator shaft was being installed so that he, standing on a stepladder, could nail it into position at each end. He claims that Mr. Pino stepped off of the two by four, causing it to slip and the flooring to fall the small distance of half an inch or an inch, which caused a two by twelve to strike him, resulting in his injuries. However, the testimony of Mr. Pino is very emphatic to the effect that this did not happen. We quote from his testimony as follows, to-wit:
“Q At any time that you were standing on the 2x4, did it ever slip ?
A No, sir.
Q Did you complete the job without it ever coming loose or slipping?
“A What are you speaking of, the 2 x 4 I was standing on?
Q Yes, did it ever slip?
A It never did get out of my hold to where I couldn’t hold it, no, sir.
Q Did it ever hit Hollis ?
A To my knowledge, no. And if it did, he didn’t mention it to me.
Q Was it long enough to have hit him if it turned sideways from where he was standing?
A In the position we was in I would have had to catch it and actually try to hit him to hit him. He couldn’t be hit by accident, no. Not to my knowledge — you’d actually have to catch it and swing it sideways.
* # * * # *
Q Did any part of your operation ever call for him to lift up on the 2x4?
A No.
*675 Q Was it ever planned that he would handle the 2 x 4 at all ?
A No.
Q Do you know what he was talking about when he said he was going to put his shoulder under it ?
A I would feel that he didn’t even know -vyhat I had the 2x4 there for. I was the one using it as leverage. All he had was a hammer and nails and was to nail the 2 x 12 when it got in place. At this time he was up there with a hammer and nails in his hand.
Q When you all finished the job did he complain of being hit, or make any mention of being hit P
A No, sir. After we finished the job he went back to work in the other side where he usually worked.
Q Did anything happen while you all were working to indicate that he might have been hit ?
A No, sir. He never mentioned anything about being hit or anything.”
Plaintiff complained to his employer of his injuries and the employer instructed him to go to Dr. Mosely. However, plaintiff returned to his job and worked continuously until May, when he was discharged as the result of his filing the first petition herein.
Plaintiff did put a Dr. John J. Graham, a Chiropractor, on the stand to testify to his treatment for pain in the shoulder and neck, but the Court refused to recognize Dr. Graham’s testimony as an expert in view of the fact that Chiropractors were not permitted to practice in Louisiana. Against the testimony of Dr. Graham, if he were to be considered as an expert, we have the testimony of Dr. Moss M. Bannerman, a well recognized Orthopedist, and Dr. Mosely, the treating physician who recommended that he go to Dr. Bannerman, to the effect that the plaintiff had no residual disability. Dr. Mosely did find pre-existing arthritis and thought possibly that plaintiff might have gout. Dr. Bannerman found some evidence of cervical strain but stated that as of March 8, 1969, plaintiff was discharged by him as fully recovered with no residual disability. As plaintiff worked during the entire time and for some months later, until he was finally discharged in May after Dr. Bannerman had made his report stating he was fully recovered, he would not have been entitled to any further compensation.
Against the testimony of these two doctors, plaintiff offered the testimony of his wife and several friends and neighbors who testified that he suffered physical pain and could not do the work which he was formerly capable of doing.
In this connection, the case of Ezell v. Employers Insurance of Wausau, 212 So.2d 500, La.App., held:
“It is the well settled rule that, where there is no material conflict in the medical evidence, lay testimony will not be considered in a workmen’s compensation case as to an employee’s disability.”
We find there has been no manifest error or abuse of discretion in the trial Judge’s decision, and the same is hereby affirmed at appellant’s cost.
Affirmed.