247 So.2d 564

Camille **LANDRY**

v.

**LIBERTY MUTUAL INSURANCE COMPANY et al.**

**No. 50732.**

May 4, 1971.

J. Minos Simon, Lafayette, for plaintiff-relator.

Jacob D. Landry, Landry, Watkins, Cousin & Bonin, New Iberia, for defendants-respondents.

McCALEB, Chief Justice.

Camille Landry is seeking workmen's compensation benefits for injuries sustained by him while he was engaged in the course and scope of his employment with the St. Martin Construction Company, Inc. The latter and its compensation insurer, Liberty Mutual Insurance Company were named defendants.

Following trial, the suit was dismissed by the district court. Its judgment was affirmed on appeal. 236 So.2d 235. We granted certiorari. 256 La. 819, 239 So.2d 345.

Generally, the record reflects that on or about October 10, 1968 plaintiff was operating a bulldozer when sand fell in his left eye. An irritation to the eye resulted, requiring medical attention. Ultimately, the eye was removed and a prosthesis substituted.

Initially, plaintiff prayed for compensation at the rate of $35 per week, not to exceed 400 weeks. However, at the conclusion of the trial, it was conceded he was able to, and did, return to his regular job at his regular salary thirteen weeks after the accident, and that the removal of his eye has not caused any reduction in his ability to perform the work required of him prior to the accident. It was stipulated that the employer's insurer had paid all medical expenses as well as compensation due for the thirteen weeks plaintiff was unable to work. Counsel then further stipulated that plaintiff was seeking compensation for 100 weeks for the loss of an eye [under R.S. 23:1221(4) (i)], or alternatively, for a serious disfigurement [under R.S. 23:1221(4) (p)], less thirteen weeks for which he has already been paid.[1]

It is argued in defense of the claim that, inasmuch as plaintiff was completely blind in the eye prior to the accident, he has suffered no disabling loss by removal thereof, and that therefore he cannot recover for the loss of an eye. As to the claim for disfigurement, it is contended that the prior condition of plaintiff's eye rendered it unsightly, that, therefore, its loss had not resulted in disfigurement, and that, in fact the plaintiff now looks better with the prosthesis.

In affirming the denial of recovery (by a two to one decision), the Court of Appeal found both of these contentions well taken.

The Court of Appeal has reviewed in some detail the history of the plaintiff's eye condition, which shows that plaintiff's

---

1. It was agreed by counsel that if compention is due, plaintiff's wages entitle him to the then maximum weekly benefit of $35.

initial trouble arose out of an injury occurring about 1948–1950.[2] Since that injury, plaintiff has experienced ever-increasing loss of vision due to corneal opacities, a covering over the cornea by scar tissue, and he has been treated on numerous occasions both for the general condition as well as for irritations due to the presence of foreign substances in the eye. In 1957 when Dr. Leon Slipakoff first saw plaintiff he had only "motion vision." That is, he could see motion of an object fourteen to sixteen inches away from his eye but could not identify the object. It was much worse by 1966, at which time Dr. Slipakoff recommended removal, being of the opinion that the eye was virtually useless and that such procedure would reduce further pain and inconvenience to plaintiff.[3]

In 1968, at the time of the accident, however, there was still some "motion vision" in the eye, and Dr. Slipakoff observed that a person is not considered medically blind so long as there is any light perception.

▆ In view of plaintiff's continued "motion vision" until the date of the accident, there is, we think, a plausible basis for plaintiff's argument that he was not in fact totally blind at the time of the accident and that, therefore, it is incorrect

to say that he lost nothing by removal of the eye. Besides, even assuming that he was, we are inclined to the belief that there is much merit in his argument that, in construing the statute liberally, he is entitled to compensation under the provisions of R.S. 1221(4) (i) for the actual loss of an eye even though it was sightless. This was the view of the Court of Appeal, First Circuit, in a similar case, Haas v. Globe Indemnity Co., 16 La.App. 180, 132 So. 246 (1931), which the Court of Appeal in the instant suit declined to follow.

▆ Nevertheless, we find it unnecessary to rest our decision on the loss of a sightless eye. For, if it is conceded for purposes of discussion, that recovery may not be had for the loss of such a member then, surely, plaintiff is entitled to compensation benefits under the omnibus provisions of R.S. 23:1221(4) (p) which read as follows:

"In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the com-

2. Plaintiff's treating physician, Dr. Leon Slipakoff, and the surgeon who removed the eye testified. The record is somewhat hazy concerning the earlier accident. However, Dr. Slipakoff had been treating him for recurring incidents with the eye since 1957, and the history is based principally on his testimony.

3. The physician explained that "20–200" vision is considered as industrial blindness and that plaintiff's was beyond "20–400".

pensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks."

That a person whose eye has been removed is disfigured is hardly debatable.

However, defendants contend that the prior condition of plaintiff's eye itself constituted a disfigurement, that actually he looks better with the artificial eye than he did prior to its loss, and that therefore he has not been disfigured as a result of the accident.

We do not agree. There are in the record pictures of plaintiff taken when he obtained his driver's license, one in 1965 and one in 1968, the latter only seven months prior to the accident. Although such photographs are not generally of the best quality, these appear quite clear and we find no perceptible disfiguration in the injured eye. Plaintiff's wife and his nephew testified that the earlier eye condition was not seriously disfiguring. His wife also said that the pictures were an accurate portrayal of how he looked when they were taken. Dr. Slipakoff who, incidentally, was a very forthright witness, did testify that most of the iris, or colored portion of the eye, had become white due to the scarring, and that he did not think that it would show up in a picture such as that taken in connection with obtaining a driver's license. He further stated that the condition

was visible at two or three feet away, but was not observable at a distance.

The record further clearly indicates that, while the prosthesis is an improvement over the empty socket, it does not look like the natural eye. Because of the way it fits into the socket, it makes the opening of the lids wider than that of the other eye. While there is some motion up and down, and left and right, it is slight, and the eye now gives the appearance of "staring" when the right eye moves.

Moreover, there are undoubtedly times when the prosthesis has to be removed. It may be true, as contended by defense counsel, that this is probably done in private and that it is not observable by "the public". But we do not believe it can be said that because plaintiff is able to make his disfigurement less noticeable to the public at large, it is not a disfigurement. Plaintiff, himself, is confronted with it as well as the members of his family. His wife testified that she has seen him without the prosthesis and described the unsightly appearance. The use of such an artificial device does not, in our opinion, render plaintiff any the less disfigured than would the application of cosmetics by a person scarred about the face, during his public appearances.

Hence, we conclude that plaintiff is entitled to receive the maximum compensation conformably with the provisions of

R.S. 23:1221(4) (p). We reject, however, plaintiff's claim for penalties and attorney's fees.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside. Judgment is rendered in favor of plaintiff for compensation in the amount of $35 per week for 100 weeks, subject to a credit of thirteen weeks, with legal interest on all weekly payments past due from their respective due dates until paid and for all costs.

BARHAM, J., concurs.

TATE, J., recused, having participated in the Court of Appeal decision.