SAMUEL, Judge.
Plaintiff filed this suit against her employer, the Orleans Parish School Board, for total and permanent disability benefits under the Louisiana Workmen’s Compensation Act. The defendant answered, admitting plaintiff’s employment and rate of compensation, but denying the accident sued upon, involving plaintiff’s teeth, seriously or permanently disfigured her or caused the impairment of a physical function.
After a trial on the merits, there was judgment in favor of plaintiff, awarding compensation for loss of a physical function at the rate of $30 per week for 100 weeks, subject to a credit for compensation previously paid, plus appropriate interest. The defendant has prosecuted this appeal from that judgment.
The accident occurred on July 7, 1972 while plaintiff was employed as a custodial worker for the defendant. A file cabinet, which she and a co-worker were attempting to move, tilted and struck her in the mouth. The defendant sent plaintiff to the offices of Drs. Houston, Roy, Faust and Ewin where she was examined and treated by Dr. A. J. Axelrod. Dr. Axelrod sutured plaintiff’s lip and referred her to Dr. Don L. Peterson, a dentist.
Dr. Peterson examined plaintiff, took x-rays, and made dental impressions. He noted her upper left and upper right central incisors were loose, the alveolar tissues were swollen and bleeding, and there was a slight fracture in the labial plate of the alveolar bone which caused complaints of pain. He also observed considerable destruction of this bone in the area where the teeth were imbedded. Plaintiff had no back teeth and suffered from periodontal disease. Dr. Peterson concluded her teeth generally were in poor condition.
With the aid of an electric vitality tester, Dr. Peterson decided that both upper central incisors were non-vital as a result of the trauma. He recommended the two teeth be extracted and replaced by either a removal or a fixed bridge. Since he regarded the latter as more satisfactory, plaintiff allowed him to extract the two teeth and install this type of dental prosthesis.
Dr. Peterson felt the fixed bridge installed by him restored and improved the functioning of plaintiff’s teeth, especially in view of their state of deterioration. In his opinion the function was at least as good, and probably much better than it had been prior to the accident in suit. He conceded, as a matter of common sense, that artificial teeth are not as good as sound, natural teeth.
. Plaintiff also was examined by Dr. August M. Hochendel, a professor of dentistry at the Louisiana State University dental school. The examination took place after the prosthesis had been installed. It was this doctor’s opinion there was no loss of function as a result of the restoration; he said the function had been improved by the *537 dental work. Dr. Hochendel’s testimony was in agreement with that of Dr. Peterson in that both concluded some deterioration of plaintiff’s fixed bridge and some maintenance problems would occur in the future. However, Dr. Hochendel also stated that because of the pyorrhea the bone support of all of plaintiff’s teeth had decreased approximately 60% and the remaining upper teeth probably will last longer because of the work done by Dr. Peterson.
At trial in the lower court and in this court plaintiff made and makes no claim under the general compensation provisions of the compensation statute. As her injury does not fall within the specific partial or permanent loss schedule of that statute, if she is to recover she must do so under R.S. 23:1221 (4)(p), which reads:
“(4) In the following cases the compensation shall be as follows:
(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.” LSA-R.S. 23:1221 (4) (p).
Our jurisprudence is that a determination of what constitutes a serious, permanent impairment of the usefulness of a physical function under the quoted provision of the statute is a question of fact to be determined by the court.[1] The record before us clearly indicates the bridge work improved plaintiff’s functional capability when compared with her natural teeth, which were not in good condition at the time of her accident because of periodontal disease. Accordingly, we conclude she did not sustain a serious and permanent impairment of a function, and consequently she is not entitled to compensation therefor.
It is argued that plaintiff nevertheless is entitled to compensation under the quoted provision on the theory that loss of the two front teeth is a serious permanent disfigurement 'as a matter of law.
The statute allows additional compensation “where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired.” Thus, under the provision there is no distinction between a determination of disfigurement and a determination of impairment of the usefulness of a physical function. If one requires a factual determination the other also must require a factual determination. In our opinion both are questions of fact to be determined by the court.
The word “disfigure”, in its general and popular use,[2] means simply to blemish or spoil the appearance or shape.[3] The only evidence in the record suggesting that any disfigurement results from plaintiff’s loss of her two upper teeth is contained in the testimony of plaintiff herself. Even this testimony is weak, since plaintiff merely stated she felt she had been disfigured as a result of the loss. However, she also said those of her friends who commented told her she looked “good” and she mentioned *538 no one who said anything to the contrary. And during the examination by Dr. Hoch-endel she told that dentist she was pleased with her appearance.
On the other hand, the medical testimony is that there is not only no disfigurement but that the prosthesis has improved plaintiff’s appearance. In addition to the periodontal disease, prior to the accident her upper and lower teeth had protruded and there had been a split or opening between the two front teeth. Both medical experts testified plaintiff now shows teeth that look more normal and esthetically better .than had been the case before the accident.
Plaintiff urges several cases in support of her argument that the loss of her teeth, even though replaced by more attractive artificial ones, constitutes disfigurement as a matter of law. She cites Odom v. Atlantic Oil Producing Co.,[4] in support of this contention. The statement of the nature and effect .of the injuries sustained by the plaintiff in the Odom case leaves much to be desired. However, a fair reading of that decision, which involved loss of portions of fingers and other injuries in addition to the loss of three bottom teeth, shows the court reached the conclusion that the loss of three teeth was compensable on a finding of fact and not as a matter of law.[5]
Plaintiff also relies on Landry v. Liberty Mutual Insurance Company,[6] in which compensation was awarded for a sightless eye which was lost and replaced by an artificial one. The Landry case and the case before us are substantially different. While Landry’s eyeball was slightly clouded because of scar tissue from previous trauma, it was not especially noticeable, particularly at a distance greater than three feet. Moreover,'the prosthetic eyeball gave that eye the appearance of being wider open than the remaining sighted eye, and the prosthetic eyeball lacked the normal side-to-side and up-and-down movements formerly possessed by Landry’s sightless natural eye. In short, the artificial eye fairly and properly looked artificial. Because it was much more disfiguring than the sightless natural eye had been, the court found as a matter of fact that it was a serious, permanent disfigurement.
The trial judge gave partial reasons for judgment in open court in order to clarify the fact that the judgment in favor of the plaintiff was “based on the fact that loss of teeth is a loss of function . ” Although he examined plaintiff’s face and mouth during the trial, he made no mention whatever of disfigurement. We are satisfied that if there had been any disfigurement, he would have made some mention of it. Our conclusion is that, within the meaning of the statutory provision, the plaintiff sustained no serious, permanent disfigurement as a result of her injury.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendant, Orleans Parish School Board, and against the plaintiff, Earlis M. Jenkins, dismissing said plaintiff’s suit; plaintiff to pay all costs in both courts.
Reversed.
MORIAL, J., dissents with written reasons.

. See Macaluso v. Schill-Wolfson, Inc., La. App., 56 So.2d 429; Davis v. Waterbury’s, Inc., La.App., 145 So. 569.

. Civil Code Article 14 reads:
“The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.” LSA-O.C. Art. 14.

.The American Heritage Dictionary of the English Language (1973), page 377.

. 162 La. 556, 110 So. 754.

. See also Davis v. Waterbury’s, Inc., footnote 1.

. 258 La. 649, 247 So.2d 564.