MORIAL, Judge
(dissenting).
The plaintiff, Earlis M. Jenkins, a custodial employee of the defendant, Orleans Parish School Board, sued for total and permanent disability -under the Louisiana Workmen’s Compensation Act. LSA-R.S. 23:1021 et seq. After trial, the district court awarded compensation for loss of a *539 physical function at the rate of $30.00 per week for 100 weeks, subject to credit for compensation previously paid plus legal interest on each past due installment from due date until paid. From this judgment the defendant has taken this suspensive appeal.
The plaintiff was injured on July 7, 1972 while employed as a custodial worker for the Orleans Parish School Board. In the course and scope of her employment, plaintiff and a co-worker attempted to move a file cabinet. The cabinet tilted and struck Miss Jenkins in the mouth cutting the outside of her upper lip. At the direction of the defendant, the plaintiff went to the medical offices of Drs. Houston, Roy, Faust and Ewin where she was examined and treated by Dr. A. J. Axelrod. Dr. Ax-elrod sutured plaintiff’s lip and sent her to Dr. Don L. Peterson, a dentist.
Dr. Peterson examined Miss Jenkins and after making X-rays and cast tests (study models or impressions) noted that her upper left and upper right central incisors were very loose, the alveolar tissues were very swollen and bleeding, and she had a slight fracture in the labial plate of her alveolar bone causing intense pain. He observed considerable destruction of Miss Jenkins’ alveolar bone in which the teeth were imbedded. He noted that the plaintiff had no posterior or back teeth (seven teeth in the upper arch as opposed to fourteen which is normal) and suffered from periodontal disease, and as a result, her teeth generally were not in good condition. Tests performed by Dr. Peterson with an electric vitality tester indicated that both teeth were non-vital. As a result of the trauma, Dr. Peterson recommended that the teeth be extracted and restored. He explained to Miss Jenkins that there were two methods of restoring lost teeth, either by a removal bridge or fixed bridge and, in his opinion, the latter method would have the most satisfactory result. Miss Jenkins followed Dr. Peterson’s advice and had him install the recommended dental prosthesis, namely, a fixed bridge.
The plaintiff testified that at times the bridge hurts “so bad * * * I have a mind to get them took out.” She testified that since the installation of the bridge food has had no taste and she experiences discomfort when she drinks cold liquids.
Defendant relies heavily on the testimony of Dr. Peterson and Dr. August M. Hochendel, a professor of dentistry at the Louisiana State University dental school to support its contentions.
Dr. Peterson testified that the fixed bridge he installed restored if not improved the functioning of plaintiff’s teeth, but that artificial teeth are never as good as the natural teeth. He further stated that some people have more hypersensitive teeth than others, and the possibility existed that the plaintiff did experience .discomfort she complained of which could persist for a period of some weeks or months.
Dr. Hochendel examined plaintiff at defendant’s request after the prosthesis was installed. In his opinion the dental work probably increased the ability to function and there was no loss of function as a result of the restoration.
Drs. Peterson and Hochendel testified that there would probably not be any deterioration of plaintiff’s fixed bridge or any maintenance problem.
At the conclusion of the trial the district court stated:
“Okay. Let me say this for the record: I am not entirely certain, but I feel that I will ultimately find, as a matter fact, that these false teeth, within medical terms, do as well as her old teeth did. I think her complaints of the pain are not substantiated by the medical and I am probably going to reach the issue in the case of whether or not Davis versus Waterbury’s 145 Southern Second, 1953, [Davis v. Waterbury’s Inc., 145 So. 569 (Orl.App.1933)] is still the law. Frankly, I am of a mind to think that the loss of teeth, per se, is a loss of function, but I’m going to review these cases particu *540 larly Odom, [Odom v. Atlantic Oil Producing Co., [162 La. 556] 110 So. 754 (La. 1926)] and see if I am correct in that supposition, which at this point, is nothing but supposition and I will have to go to the library and read all of these things, but I wanted to state this for the record, because if I find for plaintiff and the appelate [appellate] court reads this they are going to know that I find it based on the fact that loss of teeth is a loss of function, no matter how successful is the prosthesis.”
Defendant contends that LSA-R.S. 23:1221 (4) (p) [1] does not authorize the payment of weekly compensation benefits for the serious ■ and permanent impairment of the usefulness of a physical function where the usefulness of such function, i. e. the use of teeth, has been restored, if not improved; alternatively, if the loss of two teeth, per se, constitutes a serious and permanent impairment of the usefulness of a physical function, but no such impairment exists as a factual matter, a workmen’s compensation claimant should be entitled only to the minimum weekly benefit provided by law.
Workmen’s compensation awards for the loss of teeth have been considered by our courts in several cases beginning with Odom v. Atlantic Oil Producing Co., 162 La. 556, 110 So. 754 (1926) and in the succeeding cases: Wallace v. Natural Gas & Fuel Corporation, 8 La.App. 614 (1928); McBride v. Natural Gas & Fuel Corporation, 9 La.App. 513, 119 So. 722 (La.App. 2nd Cir. 1929); Smith v. L. H. Gilmer Co., 11 La.App. 336, 123 So. 451 (La.App. 2nd Cir. 1929); Davis v. Waterbury’s Inc., 145 So. 569 (Orl.La.App.1933); Sadler v. May Brothers, Inc., 185 So. 81 (La.App. 1st Cir. 1938); Goins v. Shreveport Yellow Cabs, 200 So. 481 (La.App. 2nd Cir. 1941); Macaluso v. Schill-Wolfson, 56 So.2d 429 (Orl.La.App.1952); Fruge v. Hub City Iron Works, 131 So.2d 593 (La. App. 3rd Cir. 1961); Daigle v. Blasingame, 162 So.2d 351 (La.App. 3rd Cir. 1964); Golden v. Starns-McConnell Lumber Corporation, 172 So.2d 78 (La.App. 1st Cir. 1965) writ refused, 247 La. 716, 174 So.2d 130 (1965); Eaves v. Louisiana Cypress Lumber Company, 208 So.2d 380 (La.App. 4th Cir. 1968), amended on other grounds, 253 La. 741, 219 So.2d 771 (1969).
Citing Davis, supra, as authority, defendant contends that the loss of a tooth (teeth) which has been replaced is. not the serious permanent impairment of a function contemplated by LSA-R.S. 23:1221(4) (p), absent an in fact determination that a function is impaired and relies on the language in Davis, 145 So. at p. 570:
“That case [Odom] is apparent authority for the view that the loss of a tooth, in itself, constitutes an impairment of a physical function. If the statute required that any impairment of a physical function made it necessary that compensation be allowed therefor, and that the degree of the impairment should only be taken into consideration in determining the amount of the allowance, we would have no right to deny plaintiff recovery for the loss of the tooth. But that case, Odom v. Atlantic Oil Producing Co., [162 La. 556, 110 So. 754 (1926)] does not hold that in any event the loss of one tooth is compensable under the act, but merely that the impairment of a physical function, is serious and permanent, entitles the sufferer to additional compensation, and, as we have said, although we can well imagine that in other situations the loss of even one tooth might result in serious impairment, we *541 find nothing in the record here to justify our holding that such has been the case.”
Since Davis, but absent any reference to it, by the same organ of the court in Ma-caluso, supra, succeeding cases in making an award for loss of teeth have properly made a factual determination in considering whether the loss of a tooth (teeth) is a serious permanent impairment of a function.[2] However, as I point out below, Odom said more than the Davis court attributes to it. Odom was not decided exclusively, but secondarily on the ground of serious impairment of a function. Our jurisprudence, though Davis incorrectly read Odom, has properly not stood for the proposition that loss of teeth which have been restored is per se a serious .permanent impairment of a function.
The record clearly indicates that the bridgework improved plaintiff’s functional capability when compared with her natural teeth that were not in good condition because of periodontal disease. On the basis of this record I also would conclude that plaintiff did not sustain a serious and permanent impairment of a function. Nevertheless, plaintiff is entitled to a compensation award for the loss of teeth under that clause of 23:1221 (4) (p) which provides, “ * * * where the employee is seriously permanently disfigured about the face or head, * * *.”
Subsequent to the plaintiff’s injury in Boyer v. Crescent City Paper Box Factory, Inc., 143 La. 368, 78 So. 596 (1918) the Compensation Act was amended to provide the coverage of LSA-R.S. 23 :1221(4) (p).[3] In Boyer a woman employee was scalped by machinery while in the employ of the defendant, but her .capacity to work was not affected, and she successfully persuaded the court that the Compensation Act afforded no coverage for her loss and obtained a substantial damage award in tort.
It cannot be refuted that the amendment was occasioned by the injury in Boyer v. Crescent City Paper Box Factory, Inc., supra. Therefore, I can reach no other conclusion than that it was the intention of the legislature to extend the coverage provided under the Act by the omnibus provisions of LSA-R.S. 23:1221(4) (p). That provision has as its object to provide for an award under the Act regardless of capacity to work and irrespective of the duration of the disability. Therefore, LSA-R.S. 23:1221 (4) (p) is not strictly compensatory, but in the nature of a tort remedy for a personal injury not affecting earning capacity or ability to work. Washington v. Independent Ice & Cold Storage Co., 211 La. 690, 30 So.2d 758 (1947); Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 (La.1936); Wilson v. Union Indemnity Co., 150 So. 309 (Orl.La.App. 1933).
In enlarging coverage to “ * * * cases not falling within any of the provisions already made [i. e., for disability or partial or permanent loss of a specific member], where the employee is seriously permanently disfigured about the face or head, * * * ” the provision, in effect, declares the loss of a member or organ of the face or head, for which no provision is made under the schedule of specific injuries, is compensable as a matter of law. Where any physical member or organ of the anatomy (body) not included in the schedule of specific loss, is lost, or seriously permanently disfigured, such loss or disfigurement is covered by the omnibus provisions of LSA-R.S. 23:1221(4) (p). A front tooth (teeth) *542 is a member of the body,[4] or if not a member of the body, it is a member and/or organ of the face or head which forms a part of the body. "Tooth” comes within the import of the word “member” in common acceptation. To hold that teeth are not members or organs of the body would, it appears to me, be splitting hairs. It would be likewise to hold that the amendment did not cover the loss of teeth, though restored by prosthesis, merely because it did not specifically include “loss of any member or organ” about the face or head. For the loss of two front teeth, even though there be no resulting disability, and the teeth are replaced by prosthesis, the injured employee is ipso facto entitled, under LSA-R.S. 23:1221 (4) (p) of the Act to compensation. This is in effect, an offset for what the employee might have recovered in a tort action, the right to pursue, which plaintiff has been deprived of by the Workmen’s Compensation Act.
It is unnecessary that the loss impair the appearance of the plaintiff. In laymen’s language, to disfigure is “to make less complete, perfect, or beautiful in appearance or character,”[5] (emphasis supplied) and disfigurement, in law as in common acceptation, may well be something less than total and irreversible deterioration or loss of a bodily organ. However, to sustain the loss of two permanent front teeth is certainly disfigurement to the head as nature made it, and as nature made the front, which we call the face. The fact that a prosthesis has been installed does not prevent disfigurement, as we all know the teeth will not come back and, as testified by Dr. Peterson, artificial teeth are never as good as natural teeth. Because plaintiff’s disfigurement has been made less noticeable or unnoticeable to the public at large, I cannot say she is not disfigured. Plaintiff knows it and the permanent prosthesis does not remove plaintiff’s disfigurement.
I am unwilling to assume that the legislature had less concern for the loss of a member or organ of the face or head, though such loss be not disabling, and the member or organ be replaced with an artificial one, than for loss of any other organ or member [i. e. those listed in the schedule for specific loss] cf. Landry v. Liberty Mutual Insurance Company, et. al., 258 La. 649, 247 So.2d 564 (1971), where compensation was awarded for a sightless eye which was lost and replaced by an artificial eye.
The conclusion I reach is inescapable from the clear language of our Supreme Court in Odom 110 So. at page 755 :
“In our opinion, the loss of three lower front teeth is a serious permanent disfigurement. Moreover, such a loss, within the contemplation of clause (e) [LSA-R.S. 23:1221 (4) (p)] is [also] a serious permanent impairment of a physical function, since it interferes with the one, sustaining the loss in eating. The fact that the teeth may be, and in this instance were, replaced does not wholly remove the disfigurement or the impairment, or the seriousness of either, though it lessens it. The case does not come within the exception that the clause makes with reference to cases already provided for [within the provisions already made] * * (emphasis supplied)
Plaintiff’s loss of front teeth, though replaced by bridgework which could be viewed and observed without difficulty by prospective employers might, in some circumstances, conceivably reduce plaintiff’s competitive chances of obtaining certain kinds of employment and is, therefore, disfigurement in the compensation sense.
In my opinion, to the extent that Davis stands for the proposition that the loss of a front tooth (teeth) is not disfigurement it *543 is incorrect and, therefore, we should rigidly adhere to Odom.
I am further of the opinion that the compensation principle requires a commitment to a liberal construction of the Workmen’s Compensation Act to include injured workmen within its provisions rather than exclude them. Fundamental to the Workmen’s Compensation Act is the theory of compromise in which the employer and employee each surrenders certain advantages in order to gain others which are' more important to both of them and to society. Therefore, it appears that the basic purpose of the Workmen’s Compensation Act is inclusion of employers and employees and not their exclusion, and its presumptions and its penalties are directed toward effective coverage rather than noncover-age.
The court is vested with discretion in fixing an award pursuant to the provisions of LSA-R.S. 23:1221 (4) (p). Accordingly, I would conclude that the district court did not err in making the award of compensation it did under Section 1221 (4) (p). cf. Fruge v. Hub City Iron Works, supra.
For the foregoing reasons, I respectfully dissent.

. “In cases not falling within any of the provisions already made [i. e. for disability or partial or permanent loss of a specific member], where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and as in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.” (emphasis supplied)

. “function * * * the action for which person or thing is especially fitted, used, or responsible for which a thing exists * * * bodily or mental action * * * the normal and specific contribution of any bodily part (as a tissue, or organ) to the economy of a living organism * * * ” Webster’s Third New International Dictionary (1971 ed.). “function to perform its special work or office * * Steadman’s Medical Dictionary “function * * * The special, normal, or proper action of any part or organ. * * * ” Dorland’s Illustrated Medical Dictionary, W. B. Saunders Company, 24th ed.
Function thus means more than mere existence, it means a quantitative accomplishment. The dental testimony is that the front teeth are used to bite and not chew; that plaintiff’s bite improved with the prosthesis.

. Act No. 243 of 1916.

. See 4 Blackstone Commentaries 205 in which the classic definition of the offense of mayhem includes the “foretooth” as a “member.”

. Merriman-Webster New International Dictionary 649 (3rd ed. 1964).